Mark W. FALKOWSKI; Michael Benz; Jean–Luc Chatelain; Phillippe C. Ciampossin; Craig W. Cornelius, Ph. D.; Gregg W. Cretella; John H. Davis; John D. Edwards; Anthony J. Fillicelli; Grady Floyd; Ingemar Gustafson; Arturo Gamboa; Srividya Krishnamachary; Matthew Long; Russell W. Loop, Sr.; Gregory J. Masek; Sanjay Mehta; Douglas A. Merk; Karl E. Minser; Linda J. Moore; Antruong Nguyen; Bang Nguyen; Dennis O'Dell; Gregory L. Orr; Tuan Pham; Eli Rapaich; Jonathan Reis; Brian K. Rice; Eric Rodriguez; Ken H. Rosenfeld; Jeremy Rubin, M.D.; Jan Schieberl; Rick Shroyer; Charles H. Smith; John Hampton Smith; Martha Torres; Dennis Totah; Vu Hao Truong; Sharon Woolsey, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

IMATION CORPORATION, a Delaware corporation; William T. Monahan; Bradley T. Sauer; Jill D. Burchill, Defendants–Appellees.

No. 01–16113.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 14, 2002.

Filed Oct. 29, 2002.

Neal A. Dublinsky, Lionel Z. Glancy, Glancy & Binkow LLP, Los Angeles, CA, for the appellants.

James K. Langdon II, Andrew Holly, Dorsey & Whitney LLP, Minneapolis, MN, for the appellees.

Before: HALL, KOZINSKI, and McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge.

The principal question we address here is whether state law fraud claims relating to employee stock options are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p, 78bb(f)(1)-(2). We hold that they are preempted because the alleged fraud took place "in connection with the purchase or sale of a covered security" under SLUSA. This case also involves contract claims based on multiple stock option agreements. Unlike the district court, we conclude that these claims cannot be resolved on a motion to dismiss.

## BACKGROUND[1]

This class action litigation stems from a merger in which Imation Corporation, a

---

1. This background statement is based on the allegations in the First Amended Complaint, which we accept as true because this case was dismissed on the pleadings. *See United States v. One 1997 Mercedes E420,* 175 F.3d 1129, 1130 n. 1 (9th Cir.1999).

publicly traded company, acquired Cemax–Icon, Inc. ("Cemax"), a closely held company in the medical information management business. Plaintiffs-appellants are a group of former Imation employees and contractors (the "Employees") who brought suit for breach of contract and fraud in connection with their employee stock options.

The Employees were initially employed by Cemax. As part of the merger, Cemax stock options, which had been granted to the Employees under three previously-issued stock option plans, were amended to be options on Imation stock. After the merger, Imation also granted the Employees a fourth set of options directly.

Cemax's time as an Imation subsidiary was destined to be short-lived. About a year after completion of the merger, Imation sold Cemax to the Eastman Kodak Company ("Kodak"). In connection with the sale, Imation informed the Employees that they were being transferred en masse to Kodak without any interruption of their employment at Imation's subsidiary, Cemax. They were also advised that they would have thirty days to exercise their options granted under the three Cemax plans that had vested, and that any unvested Cemax options and any new Imation options were deemed forfeited.

Unfortunately, it was not a propitious time to exercise the options that had vested. According to the complaint, Imation was in financial distress before the Cemax/Imation merger and it announced a $200 million earnings write-off just months after the merger. Later that year, Imation became embroiled in trade secret litigation with Kodak.

The Employees claim that, because personnel were key to the value of high-tech Cemax, Imation placed a premium on retaining the Employees through the Cemax–Imation merger and the closing of the sale to Kodak. Imation induced employees to remain with Cemax by misrepresenting the value of Imation stock and options. Specifically, plaintiffs allege that defendants knew, or should have known, about the impending earnings write-off at the time of the Cemax–Imation merger, and that they concealed it from the Employees in order to make the options more attractive. They further allege that defendants fraudulently told them that they would have a long future with Imation, thus misleading them as to the time frame over which they would be able to exercise the options.

The Employees filed suit in California state court against Imation and the chief executives of Imation and Cemax. The state complaint alleged seven contract counts, two counts for fraud (fraudulent inducement and negligent misrepresentation), and one count for violations of the California Labor Code. Imation removed to federal court. The district court held that the fraud claims were completely preempted by SLUSA and thus removal was proper. The remaining claims were dismissed without leave to amend because, in the view of the district court, the contracts on their face foreclosed the breach of contract claims and the stock options were not "wages" under the California Labor Code. The Employees' effort to seek interlocutory appeal was unsuccessful. The Employees then filed an amended complaint with five federal securities fraud claims, which the district court dismissed as time-barred.

## ANALYSIS

### I. SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998

▇ We first consider whether removal was proper under SLUSA, a question intertwined with our analysis of the Employees' fraud claims. Under the well-pleaded complaint rule, a federal preemption defense is ordinarily insufficient to confer

federal subject matter jurisdiction. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 3–4, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Congress may, however, "so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). SLUSA provides for just such complete preemption. *Patenaude v. Equitable Life Assurance Soc'y,* 290 F.3d 1020, 1023–24 (9th Cir. 2002).

SLUSA has been described as "the most recent in a line of federal securities statutes originating with Congress' passage of the Securities Act of 1933 ("1933 Act"), 48 Stat. 74 (1933) (codified as amended at 15 U.S.C. § 77a *et seq.*), and the Securities Exchange Act of 1934 ("1934 Act"), 48 Stat. 881 (1934) (codified as amended at 15 U.S.C. § 78a *et seq.*), and continuing through Congress' 1995 passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. 104–67, 109 Stat. 737 (1995) (codified in part at 15 U.S.C. §§ 77z–1, 78u)." *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 292 F.3d 1334, 1340 (11th Cir.2002). Under SLUSA, federal court is the exclusive venue for fraud claims "in connection with the purchase or sale of a covered security" and the statute itself specifically provides for removal of such claims to federal court. The statute was originally enacted in 1998 because heightened pleading requirements in federal securities cases caused a pilgrimage of securities claims to state courts, thus circumventing congressional reforms designed to restrict federal securities claims. *Id.* at 1341; *Dudek v. Prudential Sec., Inc.,* 295 F.3d 875, 877 (8th Cir.2002).

SLUSA provides in pertinent part:

(b) Class action limitations

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

(2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

(c) Removal of covered class actions

Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).

15 U.S.C. § 77p (1933 Act); *see also id.* § 78bb(f)(1)-(2) (identical provisions amending 1934 Act).

The parties agree that the state suit was a "covered class action" and that the complaint includes allegations of "an untrue statement or omission of a material fact." The pivotal debate centers on whether the alleged statement or omission was "in connection with the purchase or sale of a covered security."

SLUSA incorporates the definition of "covered security" found in the National Securities Markets Improvement Act of 1996:

(1) Exclusive Federal registration of nationally traded securities

A security is a covered security if such security is—

(A) listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock

Market (or any successor to such entities);

(B) listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the Commission determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing standards applicable to securities described in subparagraph (A); or

(C) is a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A) or (B).

(2) Exclusive Federal registration of investment companies

A security is a covered security if such security is a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940.

15 U.S.C. § 77r(b); *see* 15 U.S.C. §§ 77p(f)(3), 78bb(f)(5)(E).

 Because the stock options themselves are not listed on a national securities exchange, there is little dispute that the options do not meet the requirements of a "covered security." Imation stock, however, does fall squarely within the definition of a "covered security." Thus we must analyze whether the misrepresentations regarding the options can be characterized as having been "in connection with the purchase or sale" of Imation stock.

SLUSA's language is nearly identical to that of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j, which prohibits securities fraud "in connection with the purchase or sale of any security." Just as the Supreme Court observed that Section 10(b) "should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes," *Securities and Exchange Commission v. Zandford*, 535 U.S. 813, 122 S.Ct. 1899, 1903, 153 L.Ed.2d 1

(2002) (internal citation and quotation marks omitted), SLUSA should also be viewed as part of the remedial package of federal securities laws and should be construed accordingly. Consequently, it is logical to look to case law under the 1933 and 1934 Acts as a starting point for interpreting the phrase "in connection with the purchase or sale."

 Both the 1933 and 1934 Acts define the purchase or sale of a security to include any contract to buy or sell a security. 15 U.S.C. §§ 77b(a)(3), 78c(a)(13)-(14). In the seminal case of *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court interpreted these provisions:

> [T]he holders of puts, calls, options, and other contractual rights or duties to purchase or sell securities have been recognized as "purchasers" or "sellers" of securities for purposes of Rule 10b-5, not because of a judicial conclusion that they were similarly situated to "purchasers" or "sellers," but because the definitional provisions of the 1934 Act themselves grant them such a status.

*Id.* at 751, 95 S.Ct. 1917. It follows from Congress's definition that if a person contracts to sell a security, that contract is a "sale" even if the sale is never consummated. We have called this result the "aborted purchaser-seller doctrine." *See Mosher v. Kane*, 784 F.2d 1385, 1388–89 (9th Cir. 1986) (holding that where "[t]here was a contractual relationship between the parties, and the transaction was allegedly aborted as a result" of the defendants' fraud, the "contractual relationship elevated appellants to the status of statutory purchasers"), *overruled on other grounds by In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1352 (9th Cir. 1987) (en banc); *Sec. Investor Prot. Corp. v. Vigman*, 803 F.2d 1513, 1518 (9th Cir. 1986). The grant of an employee stock

option on a covered security is therefore a "sale" of that covered security. The option is a contractual duty to sell a security at a later date for a sum of money, should the employee choose to buy it. Whether or not the employee ever exercises the option, it is a "sale" under Congress's definition.

This analysis, along with practical considerations, including the ease of the verification of the transaction, leads us to conclude that the granting of an option constitutes a "purchase or sale" under SLUSA. *See Blue Chip,* 421 U.S. at 746–47 & n. 10, 95 S.Ct. 1917 (emphasizing need for documentation verifying interest in securities). Lawsuits about fraudulent dealings in contracts for the sale of securities, like lawsuits about fraudulent dealings in consummated sales, present a need for uniform federal standards and pleading requirements. *See* H.R. Conf. Rep. No. 105–803 (1998) (describing SLUSA's purpose as "to protect the interest of shareholders and employees of public companies that are the target of meritless 'strike suits' "); *Patenaude,* 290 F.3d at 1026 (" 'When considered in concert, SLUSA, [National Securities Markets Improvement Act of 1996, defining covered securities], and PSLRA demonstrate that Congress intended to provide national, uniform standards for the securities markets and nationally marketed securities.' " (quoting *Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 111 (2d Cir. 2001))). Here, the Employees allege that Imation executives misrepresented the value of what they were offering in contracting for the sale of Imation stock, precisely the type of claim that is properly the subject of federal securities law.

■ The Employees argue that the grant of an employee stock option is not a sale of a security because the only thing given in return is the employee's continued employment. They rely on the SEC's "no-sale" doctrine, which provides in part that a grant of stock under an Employee Stock Ownership Plan or similar stock bonus program is generally not a "sale" under the 1933 Act. *See* SEC Release No. 33–6188, 1980 SEC LEXIS 2141, at *52–53 (Feb. 1, 1980); *see also Int'l Bhd. of Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) (holding that an interest in a compulsory, noncontributory pension plan is not a "security"). Even assuming that SLUSA contains a similar exemption, it is inapplicable here. Unlike stock bonus plans, stock option plans involve contracts to sell stock for money at a later date (stock that is indisputably a "security"). Whether or not an option grant is a sale in the lay sense, it is a sale under the securities laws because it is a contract to sell a security when the option is exercised. We reject the contrary holding of *In re Cendant Corp. Securities Litigation,* 76 F.Supp.2d 539, 545 (D.N.J. 1999).

Closely related to the "purchase or sale" question is the nexus requirement—"in connection with." Although the Employees as option holders are purchasers, how closely related to the contract to sell the stock must the fraud be?

■ The Supreme Court's recent explication of the reach of "in connection with" in the context of Section 10(b) is instructive: "As in [our prior cases], the SEC complaint describes a fraudulent scheme in which the securities transactions and the breaches of fiduciary duty coincide." *Zandford,* 122 S.Ct. at 1906. In other words, the fraud is in connection with the securities transaction if it "coincide[s]" with the transaction. *Id.* Earlier Ninth Circuit precedent presaged the Supreme Court standard:

[T]he fraud in question must relate to the nature of the securities, the risks associated with their purchase or sale,

or some other factor with similar connection to the securities themselves. While the fraud in question need not relate to the investment value of the securities themselves, it must have more than some tangential relation to the securities transaction.

*Ambassador Hotel Co. v. Wei–Chuan Inv.,* 189 F.3d 1017, 1026 (9th Cir.1999).

The two circuits that have construed the "in connection with" language expressly in the context of SLUSA are consistent with our approach. *Green v. Ameritrade, Inc.,* 279 F.3d 590, 597–99 (8th Cir.2002); *Riley,* 292 F.3d at 1341–45. In *Green,* the Eighth Circuit held that a quote service's failure to provide real-time option quotes as it had agreed to do did not amount to fraud "in connection with" the "sale or purchase of a covered security." 279 F.3d at 598–99. The plaintiff subscriber had removed allegations that he bought or sold options in reliance on the advice, so only a pure contract claim remained. *Id.* In *Riley,* the Eleventh Circuit held that, although allegations that misrepresentations caused retention of covered securities were insufficient, allegations that they caused both purchase and retention were sufficient. 292 F.3d at 1345. Thus, these cases are consistent with a standard that looks for a relationship in which the fraud and the stock sale coincide or are more than tangentially related.

■ The claim that defendant concealed the impending accounting write-off sufficiently alleges fraud "in connection with" a contract to sell Imation shares because it involves a misrepresentation about the value of the options. The claim that defendants concealed their plan to force early exercise of the options is also sufficient because it relates to the time period during which the Employees could exercise their rights to purchase. These allegations both "coincide" with the securities transaction, *Zandford,* 122 S.Ct. at 1906,

and are easily characterized as having "more than some tangential relation to" the securities themselves. *Ambassador Hotel,* 189 F.3d at 1026.

Representations about the value of the stock and the terms on which the plaintiffs will be able to purchase the stock are properly subject to uniform federal standards, *see Patenaude,* 290 F.3d at 1026, and allegations of intentional misconduct in such representations must be clearly stated to avoid abuse, *see* H.R. Conf. Rep. 105–803 (1998). Thus, we hold that removal was proper because these claims were completely preempted by SLUSA.

## II. CONTRACT CLAIMS

■ The breach of contract claims— garden variety state law claims that are based on the various option contracts—are not preempted by federal securities laws. *See Green,* 279 F.3d at 598–99. The district court, exercising supplemental jurisdiction over these claims, held that the only reasonable interpretation of the contracts was that the Employees were terminated for purposes of the options when they were transferred to Kodak. The upshot of this interpretation is that Imation did not breach the contracts when it forfeited the Employees' unvested options and required the Employees to exercise their vested options within thirty days. In our view, this issue cannot be decided on a Rule 12(b)(6) motion.

As the California Supreme Court has explained, "[t]he primary object of all [contract] interpretation is to ascertain and carry out the intention of the parties." *City of Manhattan Beach v. Superior Court,* 13 Cal.4th 232, 52 Cal.Rptr.2d 82, 914 P.2d 160, 164 (1996) (quoting *Burnett v. Piercy,* 149 Cal. 178, 189, 86 P. 603 (1906)). The Court went on to note that "[e]xtrinsic evidence is 'admissible to interpret the instrument, but not to give it a

meaning to which it is not susceptible' [citations], and it is the instrument itself that must be given effect." *Id.* We consider the contracts here in light of these principles and in conjunction with the statutory proviso that in the case of a written contract, the parties' intent "is to be ascertained from the writing alone, if possible." Cal. Civ.Code § 1639.

Taking all of the allegations in the complaint as true, and reviewing the contracts as a whole, we cannot say that the contracts are unambiguous or that the parties' intent can be determined "from the writing alone." The core of the dispute is whether the Employees' transfer to Kodak constituted "termination of an Optionee's Continuous Status as an Employee or Consultant" as defined in the contracts. Because one contract expressly exempts transfer to "any successor" from its definition of termination, we cannot say that the contract, taken as a whole, is so clear. Further, the stock option amendment replaces "Cemax–Icon" with "Imation" in the Stock Option Agreements but not in the Stock Option Plans, and the definition of "Continuing Status as an Employee or Consultant" is found in the latter. This presents another ambiguity. Finally, the Key Management Agreements executed in favor of certain Employees protected their option rights in the event of termination without cause. Whether the transfer to Kodak was a "termination" within the meaning of the agreements is yet another ambiguity that precludes dismissal. Thus, we reverse the dismissal of the contract claims because, at this early stage of litigation, it is not "clear that no relief could be granted under any set of facts that could

be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

### III. CALIFORNIA LABOR CODE CLAIM

The Employees also assert that the failure to honor the options violated sections 216 and 225.5 of the California Labor Code. These provisions make failure to pay "wages" a misdemeanor and provide for civil fines. Resolution of this question is easy: "options are not 'wages' " under the statute's definition of the term "wages." *IBM v. Bajorek*, 191 F.3d 1033, 1039–40 (9th Cir.1999) (construing California Labor Code § 200(a)). We affirm the district court's dismissal of this claim.

### IV. SUFFICIENCY OF THE FEDERAL COMPLAINT

In the face of the ruling that their state fraud claims were preempted, the Employees filed an amended complaint asserting federal securities claims.[2] The district court ruled that these claims were barred by the one-year statute of limitations. Because we conclude that the complaint does not state a claim upon which relief can be granted, we do not reach this question. We affirm the dismissal of the federal claims, but on the alternate ground that the claims were not detailed with sufficient particularity. We further note that the district court earlier considered a request to amend the pleadings and granted such leave as it deemed appropriate. The court's denial of the Employees' efforts to

---

2. The complaint alleged violations of (1) the 1934 Act § 10(b), 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. 240.10b–5; (2) the 1934 Act § 20(a), 15 U.S.C. § 78t(a); (3) the 1933 Act § 11, 15 U.S.C. § 77k; (4) the 1933 Act § 12(a)(2), 15 U.S.C. § 77*l* (a)(2); and (5) the 1933 Act § 15, 15 U.S.C. § 77o. The sec-

ond and fifth counts invoke provisions for "controlling person" liability and are not separate grounds for liability. *See* 15 U.S.C. § 78t(a); 15 U.S.C. § 77o; *Theoharous v. Fong*, 256 F.3d 1219, 1228 n. 12 (11th Cir. 2001) (noting the "derivative nature of Section 20(a) claims").

offer further amendments was not an abuse of discretion. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir.2002) (affirming denial of leave to amend in a securities case).

### A. CLAIMS UNDER THE 1934 ACT

We recently summarized the heightened pleading requirements applicable to securities fraud claims under the 1934 Act:

> The PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter. The purpose of this heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading "fraud by hindsight." A securities fraud complaint must now "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). If the challenged statement is not false or misleading, it does not become actionable merely because it is incomplete. Further, the complaint must "state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (emphasis added). Thus the complaint must allege that the defendant made false or misleading statements either intentionally or with deliberate recklessness or, if the challenged representation is a forward looking statement, with "actual knowledge … that the statement was false or misleading." 15 U.S.C. § 78u–5(c)(1)(B)(i).

*In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084–85 (9th Cir.2002) (footnotes and some citations omitted).

■ Although the allegations here are voluminous, they do not rise to the level of specificity required under the PSLRA. The allegations consist of vague claims about what statements were false or misleading, how they were false, and why we can infer intent to mislead. We have dismissed much more specific and compelling allegations. *See id.* at 1086–97 (dismissing complaint that included four specific types of misrepresentation and allegations of millions of dollars in insider stock sales); *Ronconi v. Larkin*, 253 F.3d 423, 429–37 (9th Cir.2001); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir.1999). Thus, we affirm the dismissal of the claims brought under the 1934 Act.

### B. CLAIMS UNDER THE 1933 ACT

■ The alleged violations of the 1933 Act §§ 11 and 12(a)(2) similarly fail to state a cognizable claim. Although these provisions are not governed by the heightened pleading standards of the PSLRA, 15 U.S.C. § 78u–4(b)(1) ("under this chapter"), they are subject to Federal Rule of Civil Procedure 9(b): "[T]he circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir.1996).

Section 11 provides for civil liability for filing a false registration statement. 15 U.S.C. § 77k. The complaint alleges that Imation filed a registration statement that was "materially inaccurate and misleading." It also gives some details about the contents of the statement, but contains no information on why it was false. Thus, it fails to meet the requirements of Rule 9(b).

■ Section 12(a)(2) provides for civil liability of securities sellers to purchasers if the seller used certain instruments, in-

cluding a prospectus, containing untrue statements or material omissions. 15 U.S.C. § 77*l*(a)(2). Again the complaint alleges that Imation's prospectus "contained untrue statements of material facts, omitted to state other facts necessary to make the statements not misleading, and concealed and failed to disclose material facts." These are textbook examples of conclusory allegations that fail to satisfy the particularity requirements of Rule 9(b).

**AFFIRMED** in part, **REVERSED** in part, and remanded. Each party shall bear its own costs on appeal.