

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-16-2005

# Rowinski v. Salomon Smith Barney

Precedential or Non-Precedential: Precedential

Docket No. 03-4762

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Rowinski v. Salomon Smith Barney" (2005). *2005 Decisions.* Paper 1504.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1504

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-4762

_____

RYAN ROWINSKI,
On Behalf of Himself and
All Others Similarly Situated

v.

SALOMON SMITH BARNEY INC.

Ryan Rowinski,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 02-cv-02014
(Honorable James M. Munley)

_____

Argued October 28, 2004

Before:  SCIRICA, *Chief Judge*,
FISHER and GREENBERG, *Circuit Judges*

(Filed February 16, 2005)

IRA N. RICHARDS, ESQUIRE (ARGUED)
Trujillo Rodriguez & Richards, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, Pennsylvania 19103

ROBERTA D. LIEBENBERG, ESQUIRE
ARTHUR M. KAPLAN, ESQUIRE
Fine Kaplan & Black
1845 Walnut Street, 23rd Floor
Philadelphia, Pennsylvania 19103

MICHAEL J. BONI, ESQUIRE
Kohn Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, Pennsylvania 19107
        Attorneys for Appellant


RICHARD A. ROSEN, ESQUIRE (ARGUED)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

JOSEPH G. FERGUSON, ESQUIRE
Rosenn, Jenkins & Greenwald, L.L.P.
120 Wyoming Avenue
Scranton, Pennsylvania 18503
     Attorneys for Appellee

---

OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

The Securities Litigation Uniform Standards Act of 1998 ("SLUSA") provides for the removal and federal preemption of certain state court class actions alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A) (West Supp. 2004). At issue is whether this action on behalf of a putative class of Salomon Smith Barney retail brokerage customers is preempted by SLUSA.

Plaintiff Ryan Rowinski filed this class suit in Pennsylvania state court alleging Salomon Smith Barney's dissemination of "biased investment research" breached the parties' services contract, unjustly enriched Salomon Smith Barney, and violated state consumer protection law. Salomon Smith Barney removed to federal court, where the District Court

3

granted its motion to dismiss based on SLUSA preemption. We will affirm.

## I.

Salomon Smith Barney is one of the world's largest stock brokerage and investment banking firms. Among its customers are corporate clients who receive investment banking services such as equity and debt underwriting, and individual investors who maintain Salomon Smith Barney retail brokerage accounts. In servicing its retail brokerage customers, Salomon Smith Barney produces investment research compiled by a team of in-house analysts. This action alleges that Salomon Smith Barney's research was unlawfully biased in favor of the firm's investment banking clients, to the detriment of its retail brokerage customers.

Purporting to represent a class of "[a]ll persons who maintained a Salomon Smith Barney retail brokerage account and who paid any charges[,] commissions or fees to Salomon Smith Barney," plaintiff sued Salomon Smith Barney in Pennsylvania state court for breach of contract, unjust enrichment, and violation of state consumer protection statutes. The gravamen of the action is the allegedly "biased investment research and analysis" provided by Salomon Smith Barney to the putative class. (Compl. ¶ 2.) Specifically, plaintiff alleges Salomon Smith Barney "artificially inflates the ratings and analysis of its investment banking clients" in order to "curry favor with investment banking clients and reap hundreds of

4

millions of dollars in investment banking fees." Plaintiff also alleges the National Association of Securities Dealers ("NASD") fined Salomon Smith Barney for "issuing materially misleading research reports," and that "examples of Defendant's providing retail brokerage customers with biased and misleading analyst reports abound."

Count I seeks damages under state law for breach of contract. This count alleges Salomon Smith Barney "failed to provide unbiased analysis and instead provided biased and misleading analysis that was intended to curry favor with Defendant's existing and potential investment banking clients. Defendant thereby breached its contracts with Plaintiff and the Class." Count II, for unjust enrichment, seeks recovery of the "fees and charges" paid to Salomon Smith Barney in exchange for "objective and unbiased investment research and analysis." Count III alleges deceptive consumer practices in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.* This count seeks recovery of "millions of dollars in unnecessary and unwarranted brokerage fees and charges" attributable to Salomon Smith Barney's failure "to disclose material facts to its retail brokerage customers" regarding "the relationship between its analysts and its investment bankers."

Plaintiff's prayer for relief seeks, *inter alia*, damages in "an amount equal to the amount of any and all fees and charges collected" from the class and "all available compensatory damages."

5

Salomon Smith Barney removed the action to the United States District Court for the Middle District of Pennsylvania. After plaintiff filed a motion to remand to state court, Salomon Smith Barney filed a cross-motion to dismiss based on SLUSA preemption. The District Court denied the motion to remand and granted Salomon Smith Barney's motion to dismiss. Relying in part on the Supreme Court's decision in *SEC v. Zandford*, 535 U.S. 813 (2002), the District Court held the complaint, though framed in terms of state law, nevertheless alleged a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security. Accordingly, the District Court dismissed plaintiff's claims under SLUSA. *Rowinski v. Salomon Smith Barney, Inc.*, 2003 U.S. Dist. LEXIS 20918 (M.D. Pa. Nov. 20, 2003).

## II.

The Securities Litigation Uniform Standards Act of 1998 provides, in part:

**(1) Class action limitations**

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or . . . that the defendant used or employed any manipulative or

6

deceptive device or contrivance in connection with the purchase or sale of a covered security.

**(2) Removal of covered class actions**

Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f)(1)-(2).[1]

The SLUSA removal provision, § 78bb(f)(2), is jurisdictional.[2]  It creates an express exception to the well-

---

[1]SLUSA amends both the Securities Act of 1933 and the Securities Exchange Act of 1934.  The 1933 Act amendments are codified at 15 U.S.C. § 78p.  The 1934 Act amendments, which are functionally identical, are codified at 15 U.S.C. § 78bb(f).  For ease of reference, we cite only the 1934 Act codification.

[2]We note, but need not address, a division among the courts of appeals on an issue of appellate jurisdiction under SLUSA. *Compare Kircher v. Putnam Funds Trust*, 373 F.3d 847 (7th Cir. 2004), *with Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116 (2d Cir. 2003), *and United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960 (9th Cir. 2004)*.  The

7

pleaded complaint rule,[3] conferring federal removal jurisdiction over a unique class of state law claims. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) (distinguishing between removal of state law claims "when Congress expressly so provides" and removal "when a federal statute wholly displaces the state-law cause of action through complete pre-emption"). The jurisdictional inquiry under SLUSA tracks the plain language of the statute. No matter how an action is pleaded, if it is a "covered class action . . . involving a covered security," removal is proper.[4] The removing party bears the burden of

question – whether SLUSA remand orders are appealable – is not implicated by this case, and we express no opinion on the matter.

[3]*See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

[4]The definition of "covered class action" is set forth at 15 U.S.C. § 78bb(f)(5)(B). In general, a covered action is one for damages on behalf of more than fifty class members in which common issues of law or fact are alleged to predominate. The definition of "covered security" is set forth at 15 U.S.C. § 78bb(f)(5)(E), which references those securities specified in paragraphs (1) or (2) of § 18(b) of the Securities Act of 1933, excluding any debt security that is exempt from registration under that Act.

8

establishing these elements. *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 445 (3d Cir. 2003).

The District Court exercised removal jurisdiction under § 78bb(f)(2) and 28 U.S.C. § 1331, and granted Salomon Smith Barney's motion to dismiss based on SLUSA preemption. We have jurisdiction under 28 U.S.C. § 1291. Our review, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, is plenary. *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 273 (3d Cir. 2004).

## III.

In 1995, Congress enacted the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 *et seq.* ("PSLRA"), to curb abuses in private class action securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 32-37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 730-32. The PSLRA implemented a host of procedural and substantive reforms, including "more stringent pleading requirements to curtail the filing of meritless lawsuits." *In re Advanta Sec. Litig.*, 180 F.3d 525, 532 (3d Cir. 1999) (quoting H.R. Conf. Rep. No. 104-369, at 37).

By 1998, Congress concluded that plaintiffs were circumventing the requirements of the PSLRA by filing private securities class actions in state rather than federal court. SLUSA was designed to close this perceived loophole by authorizing the removal and federal preemption of certain state court securities class actions. *See* 15 U.S.C. § 78a (stating

9

SLUSA aims "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Private Securities Litigation Reform Act of 1995"). As the Senate Banking Committee Report explained, Congress envisioned a broad interpretation of SLUSA to ensure the uniform application of federal fraud standards. S. Rep. No. 105-182, *available at* 1998 WL 226714, *8 (Leg. Hist.) ("[I]t remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.")

SLUSA preempts, *inter alia*, covered class actions alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A). This language mirrors existing federal securities law under § 10(b) and Rule 10b-5 of the 1934 Act. *See* 15 U.S.C. § 78j(b) (prohibiting fraud "in connection with the purchase or sale of any security"); 17 C.F.R. § 240.10b-5 (2004) (prohibiting, *inter alia*, material misrepresentations and omissions "in connection with the purchase or sale of any security"). A threshold question, then, is whether existing case law under § 10(b) and Rule 10b-5 informs the interpretation of SLUSA's "in connection" requirement.

We believe it does. "Where Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning." *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981)

10

(citation omitted); *see also Molzof v. United States*, 502 U.S. 301, 307 (1992). Because SLUSA employs terms with settled meaning under existing federal securities law, Congress evidently intended to preempt those actions sufficiently "connected" to a securities transaction to be actionable under § 10(b) and Rule 10b-5. In other words, SLUSA furthers the uniform application of federal fraud standards without expanding or constricting the substantive reach of federal securities regulation. *See* 15 U.S.C. § 78a (emphasizing considerations of federalism in SLUSA's legislative findings). Accordingly, we will interpret SLUSA's "in connection" requirement in light of existing doctrine under § 10(b) and Rule 10b-5.[5]

## IV.

As noted, the central issue on appeal is whether plaintiff's state law complaint alleges a material misrepresentation or omission in connection with the purchase or sale of a covered security. If so, the action must be dismissed

---

[5]Other courts have adopted this approach. *See, e.g., Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2005 U.S. App. LEXIS 410, *27-28 (2d Cir. Jan. 11, 2005); *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1342 (11th Cir. 2002); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129 (9th Cir. 2002). *But see Spielman*, 332 F.3d at 132-33 (Newman, J., concurring) (questioning whether "in connection" has the same meaning under SLUSA and § 10(b)).

as preempted. Plaintiff contends neither the "misrepresentation" nor the "in connection" elements are satisfied.

## A.

The misrepresentation issue is straightforward. Plaintiff's complaint is replete with allegations that Salomon Smith Barney disseminated biased and materially misleading investment research. Plaintiff alleges Salomon Smith Barney "provides customers with biased investment research and analysis"; "artificially inflates the ratings and analysis of its investment banking clients"; was fined by the NASD "for issuing materially misleading research reports"; and "provided biased and misleading analysis that was intended to curry favor with Defendant's existing and potential investment banking clients." These allegations, which are incorporated by reference in every count in the complaint, readily satisfy the misrepresentation requirement under SLUSA.

Plaintiff responds that the "breach of contract claim does not involve a misrepresentation or omission." In other words, plaintiff contends that because "misrepresentation" is not an essential legal element of his claim under Pennsylvania contract law, the factual allegations of misrepresentation included in the complaint are irrelevant to the SLUSA inquiry.

We disagree. Plaintiff's suggested distinction – between the legal and factual allegations in a complaint – is immaterial under the statute. SLUSA preempts any covered class action "alleging" a material misrepresentation or omission in

12

connection with the purchase or sale of securities. 15 U.S.C. § 78bb(f)(1). Under this provision, preemption does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are "alleged" in one form or another. A contrary approach, under which only essential legal elements of a state law claim trigger preemption, is inconsistent with the plain meaning of the statute. Furthermore, it would allow artful pleading to undermine SLUSA's goal of uniformity – a result manifestly contrary to congressional intent. 15 U.S.C. § 78a ("The Congress finds that . . . . it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities[.]"); S. Rep. No. 105-182, *available at* 1998 WL 226714, *8 ("[I]t remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.").

Where, as here, allegations of a material misrepresentation serve as the factual predicate of a state law claim, the misrepresentation prong is satisfied under SLUSA.

**B.**

The "in connection" issue is more difficult. Plaintiff contends the complaint states a straightforward breach of contract claim, *i.e.*, Salomon Smith Barney agreed to provide unbiased investment research and failed to provide it. Salomon Smith Barney responds that the action, while nominally resting

on state law, nevertheless alleges a material misrepresentation in connection with the purchase or sale of securities. The issue turns on whether plaintiff's class-wide allegations, charging Salomon Smith Barney with systematically and materially misrepresenting its investment banking clients' investment ratings and analyses, are "connected" to the purchase or sale of securities. As noted, our analysis is informed by "in connection" case law under § 10(b), Rule 10b-5 and SLUSA.

The Supreme Court recently addressed the "in connection" element in *Zandford*, an action under § 10(b) and Rule 10b-5. The Court unanimously accepted the SEC's "broad reading of the phrase 'in connection with the purchase or sale of any security,'" 535 U.S. at 819, and held the requisite connection is established where a "fraudulent scheme" and a securities transaction "coincide." *Id*. at 825. *Zandford* relied upon and reaffirmed *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12 (1971), which likewise held that a fraudulent scheme "touching" on a securities transaction satisfied the "in connection" element of § 10(b) and Rule 10b-5.

At the same time, *Zandford*'s "broad" interpretation is not boundless. It "does not transform every breach of fiduciary duty into a federal securities violation." 535 U.S. at 825 n.4. Federal securities law is circumscribed, and strikes a balance between uniform regulation of a national market and preservation of those areas "traditionally left to state regulation," such as corporate, contract and fiduciary law. *Santa Fe Indus. Inc. v. Green*, 430 U.S. 462, 478-80 (1977) (emphasizing

14

principles of federalism and holding claims challenging "internal corporate mismanagement" are not actionable under § 10(b)).

We also have addressed the "in connection" requirement in the context of § 10(b) and Rule 10b-5. In *Semerenko v. Cendant Corp.*, we held the "in connection" criteria is satisfied where material misrepresentations are "disseminated to the public in a medium upon which a reasonable investor would rely." 223 F.3d 165, 176 (3d Cir. 2000); *see also McGann v. Ernst & Young*, 102 F.3d 390, 392-96 (9th Cir. 1996); *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 862 (2d Cir. 1968) (en banc). Additionally, we have held that a broker/investor dispute involving the credit terms of a margin account arises "in connection" with the purchase or sale of securities, in part because investors maintain brokerage accounts "for the very purpose of trading in securities." *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985).

Courts applying SLUSA generally have adhered to a broad interpretation of the "in connection" element. In *Behlen v. Merrill Lynch*, the Court of Appeals for the Eleventh Circuit held that despite plaintiffs' removal of "all explicit references to any fraudulent activity" from their state law complaint, breach of contract claims involving misrepresentations by a securities broker were sufficiently connected to a securities transaction to trigger preemption. 311 F.3d 1087, 1090 (11th Cir. 2002). Other courts have similarly scrutinized the pleadings to arrive at the "essence" of a state law claim, in order to prevent artful

15

drafting from circumventing SLUSA preemption. *Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 880 (8th Cir. 2002); *see also Prof'l Mgmt. Assoc., Inc. v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir. 2003) (preempting state law claims where the "complaint *implicitly* alleges" that "misrepresentations and omissions were made in connection with the purchase or sale of securities") (emphasis added); *Falkowski*, 309 F.3d at 1131 (9th Cir. 2002) (preempting state law claims involving employee stock options because "[r]epresentations about the value of stock . . . are properly subject to uniform federal standards").

The plaintiff's theory of damages also bears on the SLUSA "in connection" inquiry. *See, e.g.*, *Behlen*, 311 F.3d at 1094 (11th Cir. 2002) (considering allegations of "excess fees and commissions" in determining whether claims are "connected" to a securities transaction); *Dabit*, 2005 U.S. App. LEXIS 410, at *65 (2d Cir. Jan. 11, 2005) (holding that "claims for commissions paid . . . are preempted"). In other words, the relief sought by plaintiffs – such as the recovery of investment losses or trading fees – may be relevant in "connecting" the allegations to the purchase or sale of securities.[6]

---

[6]Plaintiff cites *Green v. Ameritrade, Inc.*, 279 F.3d 590, 599 (8th Cir. 2002), and *KPMG*, 335 F.2d at 804 (8th Cir. 2003), for the proposition that the measure of damages is not relevant to the SLUSA preemption inquiry. But those cases suggest the contrary. Neither *Green* nor *KPMG* rejects the relevance of damages under SLUSA, and *Green* explicitly considers the

16

## C.

Under existing "in connection" case law, we find several factors relevant in distinguishing between preempted claims and those remaining within the province of state law: first, whether the covered class action alleges a "fraudulent scheme" that "coincides" with the purchase or sale of securities, *Zandford*, 535 U.S. at 825; second, whether the complaint alleges a material misrepresentation or omission "disseminated to the public in a medium upon which a reasonable investor would rely," *Semerenko*, 223 F.3d at 176; third, whether the nature of the parties' relationship is such that it necessarily involves the purchase or sale of securities, *see Angelastro*, 764 F.2d at 944 (noting that customers maintain brokerage accounts "for the very purpose of trading in securities"); and fourth, whether the prayer for relief "connects" the state law claims to the purchase

---

theory of damages in its "connection" analysis. The plaintiffs in *Green* sought recovery *only* of an annual account fee – this limited theory of damages was one reason the court concluded the action was not preempted. 279 F.3d at 599 n.7. In *KPMG*, the court merely stated SLUSA preemption "*is not limited* to cases involving damages claimed as a result of the purchase or sale of securities." 335 F.3d at 803 (emphasis added).

17

or sale of securities, *see Dabit*, 2005 U.S. App. LEXIS 410, at *65.[7]

Applying this flexible framework, Rowinski's state law action is preempted by SLUSA. First, under *Zandford*, the complaint alleges a fraudulent scheme coinciding with the purchase or sale of securities. Plaintiff alleges that Salomon Smith Barney systematically misrepresented the value of securities to the investing public in order to "curry favor with investment banking clients and reap hundreds of millions of dollars in investment banking fees." For this purported scheme to work, investors must purchase the misrepresented securities. Absent purchases by "duped" investors and a corresponding inflation in the share price, Salomon Smith Barney's biased analysis would fail to benefit its banking clients and, in turn, would fail to yield hundreds of millions of dollars in investment banking fees. The scheme, in other words, necessarily "coincides" with the purchase or sale of securities. *Zandford*, 535 U.S. at 825; *see also Alley v. Miramon*, 614 F.2d 1372, 1378 n.11 (5th Cir. 1980) (stating the "in connection" test is

---

[7]The non-inclusive four factors identified here are not requirements, but rather guideposts in a flexible preemption inquiry. *Cf. Zandford*, 535 U.S. at 819 (stating the in connection requirement "should be construed not technically and restrictively, but flexibly" to effectuate the goals of the 1934 Act) (citations omitted). In a SLUSA case involving different facts or allegations, other considerations also may be relevant.

satisfied where "the proscribed conduct and the sale are part of the same fraudulent scheme").

Second, plaintiff repeatedly alleges that Salomon Smith Barney disseminated material misrepresentations "in a medium upon which a reasonable investor would rely," namely, investment research reports. The requisite connection to a securities transaction is therefore established under *Semerenko*, 223 F.3d at 176. This factor is particularly significant given SLUSA's goal of facilitating the uniform application of "national standards for securities class action lawsuits involving nationally traded securities." 15 U.S.C. § 78a. Where the defendant in a covered class action is alleged to have misrepresented the value of nationally traded securities to the investing public, SLUSA requires that federal fraud standards govern the claims.

Third, the action arises from the broker/investor relationship, the "very purpose" of which is "trading in securities." *Angelastro*, 764 F.2d at 944. If the purpose of a brokerage account is to enable the purchase and sale of securities, as *Angelastro* sensibly observed, then a class of brokerage customers whose action alleges misleading investment advice is almost certain to include "purchasers" or "sellers" of the misrepresented securities.

Plaintiff contends, however, that investment research is not necessarily disseminated in connection with the purchase or sale of securities, citing investors who "hold," rather than

19

purchase or sell, the recommended securities.[8]   But this argument fails in light of plaintiff's complaint, which defines the putative class as: "All persons who maintained a Salomon Smith Barney retail brokerage account and who paid any charges[,] commissions or fees to Salomon Smith Barney."   This broad class definition is not limited to non-purchasers and non-sellers, and it necessarily encompasses claims by Salomon Smith Barney retail brokerage customers who purchased or sold the misrepresented securities – claims that are squarely preempted under SLUSA.

Fourth, plaintiff seeks recovery of "any and all fees and charges collected from Plaintiff and the Class," as well as "all available compensatory damages."   This prayer for relief encompasses trading fees and commissions – charges incurred only in connection with the purchase or sale of securities.

Together, these factors connect plaintiff's state law action to the purchase or sale of securities, and bring it well within the bounds of SLUSA.   The complaint sets forth a scheme "coinciding" with the purchase or sale of misrepresented securities, and the broadly-defined putative class – comprised of all Salomon Smith Barney retail brokerage customers seeking recovery of any trading fees and commissions  – necessarily includes "purchasers" and "sellers" of the misrepresented

---

[8]*See generally Small v. Fritz Cos.*, 65 P.3d 1255 (Cal. 2003) (recognizing securities fraud claims by "holders," as distinct from purchasers and sellers, under California law).

securities.[9]  Under the statutory language, inclusion of these

[9]Because this putative class includes "purchasers" and "sellers," we need not address whether SLUSA preempts actions comprised solely of non-purchasers and non-sellers.  Several courts have held SLUSA does not preempt class actions on behalf of non-purchasers or non-sellers.  *See, e.g., Dabit*, 2005 U.S. App. LEXIS 410, *50 (2d Cir. Jan. 11, 2005); *Riley*, 292 F.3d at 1345 (11th Cir. 2002); *Green*, 279 F.3d at 598 (8th Cir. 2002).  This view finds support in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 n.5 (1975) ("the wording of § 10(b), making fraud *in connection with the purchase or sale of a security* a violation of the Act, is surely badly strained when construed to" encompass claims by non-purchasers and non-sellers) (emphasis in original).

On the other hand, Salomon Smith Barney directs our attention to an amicus brief filed by the SEC in *Dabit*, 2005 U.S. App. LEXIS 410.  The SEC contends that *Blue Chip Stamps* established a prudential rule of standing for private actions under § 10(b) and Rule 10b-5, but not a limitation on the scope of SLUSA preemption.  That is, the SEC views SLUSA as broadly preempting state law securities fraud class actions, including those on behalf of non-purchasers and non-sellers, even if such claims are not actionable in federal court under § 10(b) and Rule 10b-5.  This position finds support in, *inter alia*, *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 284 (1992) ("The purchaser/seller standing limitations in Rule 10b-5 damage actions . . . does not stem from a

preempted claims within the putative class compels dismissal of the entire action.  15 U.S.C. § 78bb(f)(1) (requiring dismissal of any covered "action" alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security").

## D.

*Green v. Ameritrade, Inc.*, 279 F.3d 590 (8th Cir. 2002), on which plaintiff principally relies, is distinguishable.  Decided before the Supreme Court's decision in *Zandford*, *Green* involved breach of contract claims against Ameritrade, an online broker.  The plaintiffs alleged that Ameritrade had agreed to provide its customers "real time" stock quotes for a flat monthly fee, when in fact the quotes were not "real time."  The customers sued for breach of contract, and the Court of Appeals for the Eighth Circuit held the complaint could not "reasonably be read as alleging" fraud in connection with the purchase or

---

construction of the phrase 'in connection with the purchase or sale of any security.'") (O'Connor, J., concurring).  But the Court of Appeals for the Second Circuit rejected the SEC's interpretation, holding SLUSA preemption is limited to actions by purchasers or sellers.  *Dabit*, 2005 U.S. App. LEXIS 410, *50.

We need not explore this frontier of SLUSA.  For the reasons stated, we hold this particular class action alleges claims by purchasers and sellers, and therefore arises "in connection" with the purchase or sale of covered securities.

22

sale of securities. *Id.* at 598. Notably, the court considered the plaintiffs' theory of damages, which was limited to recovery of the flat monthly account fees, in determining the action was not sufficiently connected to the purchase or sale of securities to warrant preemption. *Id.* at 599 n.7.

But *Green* involved neither misleading investment research nor a prayer for recovery of trading fees and commissions. The plaintiffs in *Green* alleged Ameritrade misrepresented its "real time" services, not the value of its investment banking clients' securities. And the *Green* plaintiffs sought recovery of a flat monthly account fee, not "all fees and charges collected from Plaintiff and the Class" (including trading fees), as plaintiff seeks here. In short, *Green* does not address the facts of this case. For the reasons stated, the connection between the allegations here and the purchase or sale of securities is substantially more direct.

Furthermore, the authority of *Green* is undermined by *Zandford*'s "broad" interpretation of the "in connection" requirement, 535 U.S. at 819, and by subsequent decisions from the Eighth Circuit. *See Dudek*, 295 F.3d 875 (8th Cir. 2002); *KPMG*, 335 F.3d 800 (8th Cir. 2003). For example, *Dudek* holds that SLUSA preemption applies where the "essence" of a state law complaint is the misleading marketing of securities. 295 F.3d at 880. Similarly, *KPMG* holds SLUSA preempts actions "implicitly" alleging a misrepresentation or omission in connection with the purchase or sale of securities. 335 F.3d

23

803.  Both cases were decided after *Green* and both, like *Zandford*, employ a broad and flexible "in connection" analysis.

Plaintiff also contends that as master of his own complaint, he is entitled to plead around SLUSA.  But SLUSA stands as an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting.  In this context – where Congress has expressly preempted a particular class of state law claims – the question is not whether a plaintiff pleads or omits certain key words or legal theories, but rather whether a reasonable reading of the complaint evidences allegations of "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1).  Although plaintiff scrupulously avoids pleading the words "purchase" or "sale" of securities, a reasonable reading of the complaint, informed by existing "in connection" doctrine, establishes that the elements of SLUSA preemption are satisfied.[10]

---

[10]We note that a majority of district courts addressing similar state law claims involving "biased brokerage research" have found them preempted by SLUSA.  *See, e.g.*, *Cinicolo v. Morgan Stanley Dean Witter & Co.*, 2004 U.S. Dist. LEXIS 24896 (S.D.N.Y. Dec. 9, 2004); *Dacey v. Morgan Stanley Dean Witter & Co.*, 263 F. Supp. 2d 706 (S.D.N.Y. 2003); *Feitelberg v. Merrill Lynch & Co, Inc.*, 234 F. Supp. 2d 1043 (N.D. Cal. 2002); *McCullagh v. Merrill Lynch & Co.*, 2002 U.S. Dist. LEXIS 3758 (S.D.N.Y. Mar. 6, 2002); *Korsinsky v. Salomon*

On a motion to dismiss, we will draw all reasonable inferences in favor of the plaintiff. *In re Adams Golf, Inc. Sec. Lit.*, 381 F.3d at 273. Even so, we hold that plaintiff alleges material misrepresentations in connection with the purchase or sale of securities. The complaint repeatedly alleges that Salomon Smith Barney misrepresented the value of its investment banking clients' securities, it sets forth a broad class definition encompassing purchasers and sellers, and it seeks recovery of trading fees and commissions charged in connection with the purchase or sale of securities.[11] Accepting these factual allegations as true, and evaluating them under SLUSA, we conclude the putative class action is preempted.

---

*Smith Barney, Inc.*, 2002 U.S. Dist. LEXIS 259 (S.D.N.Y. Jan. 10, 2002); *Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 189 F. Supp. 2d 14 (S.D.N.Y. 2001). *But see Norman v. Salomon Smith Barney, Inc.*, 2004 U.S. Dist. LEXIS 10619 (S.D.N.Y. June 9, 2004); *Gray v. Seaboard Securities, Inc.*, 241 F. Supp. 2d 213 (N.D.N.Y. 2003).

[11]Although plaintiff's theory of damages is one of several factors connecting this action to the purchase or sale of securities, we do not suggest that the absence of a prayer for trading fees, commissions or investment losses alone would necessarily defeat preemption. Plaintiffs cannot circumvent SLUSA simply by failing to plead damages with specificity in state court.

Finally, plaintiff contends we should examine each count in the complaint separately to determine whether it is preempted. *See Falkowski*, 309 F.3d 1123 (9th Cir. 2002) (preempting state law fraud counts but remanding breach of contract counts). As an initial matter, we question whether preemption of certain counts and remand of others is consistent with the plain meaning of SLUSA. The statute does not preempt particular "claims" or "counts" but rather preempts "actions," 15 U.S.C. § 78bb(f)(1), suggesting that if any claims alleged in a covered class action are preempted, the entire action must be dismissed.[12] But we need not decide whether a count-by-count analysis is appropriate in this case, because plaintiff has incorporated every allegation into every count in his complaint. Our SLUSA analysis therefore applies to each of plaintiff's counts, and compels the conclusion that each is preempted.

## V.  Conclusion

For the reasons set forth, we will affirm the judgment of the District Court.

---

[12]We note that the District Court dismissed plaintiff's claims without prejudice.