**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHARLES T. MADDEN; SHASHIDHAR
ACHARYA, M.D.; ACHAUER FAMILY
LIMITED PARTNERSHIP, a limited
partnership; ANGELA ALLEVATO,
M.D.; ROBERT A. BAIRD, M.D.;
ANNETTE C. BERNHUT-CAPLIN,
D.O.; THOMAS W. BRODERICK,
M.D.; NANCY K. BROWNELL, M.D.;
DAWN LYNN BRUNER, M.D.;
ROBERT BUDMAN, M.D.; ROBERT
WILLIAM BUSTER, M.D.; MICHAEL
W. CATER, M.D.; ANNA LISA
CHAVEZ, M.D.; JANAK R. CHOPRA,
M.D.; RAMAN CHOPRA, M.D.;
GASTON CILLIANI, M.D.; CARMELITA
R. CO-CASQUEJO, M.D.; WILLIAM J.
COLLINS, M.D.; LEO H. CUMMINS,
M.D.; CHRISTINA K. ELLIOTT; MARK
H. ELLIS, M.D.; STANLEY P.
GALANT, M.D.; SHERWIN A.
GILLMAN, M.D. and BONNIE S.
GILLMAN, as Trustees for the
Gillman Community Property
Trust; KEITH L. GLADSTIEN, M.D.;
STUART M. GORDON; KENNETH E.
GRUBBS, D.O.; NORAH GUTRECHT,
M.D.;

No. 07-15900

D.C. No.
CV-06-04886-JSW

ORDER AND
OPINION

10577

THOMAS A. HRYNIEWICKI, M.D.; R. JUDD JESSUP; STANLEY KANOW, M.D.; LEONARD FRANK KELLOGG JR., M.D.; MARK E. KRUGMAN, M.D.; LAWRENCE N. KUGELMAN; SANDRA BARRY LIEBERMAN, as successor in interest to Melvyn B. Lieberman, M.D., Trustee for the Melvyn B. Lieberman Trust; ALAN MADERIOUS, M.D.; MARK C. MARTEN; WILLIAM C. MCMASTER, M.D.; MARIA E. MIÑON, M.D.; JUDITH HARRISON-MONGE, M.D., as Trustee for the Harrison-Monge 1996 Family Trust; RONALD W. MORELAND; STANLEY K. NAKAMOTO, M.D.; CHRISTOPHER C. OHMAN; KUSUM OHRI, M.D.; JACK M. OSBORN, M.D.; RICHARD T. PITTS, D.O.; NORMAN J. ROSEN, M.D.; ERIC MURROW ROWEN, M.D.; HELEN ROWEN, as Trustee for the Rowen Family Trust Dated May 5, 1982; MARK STEVEN ROWEN; MARSHALL ROWEN, M.D., individually and as Trustee for the Rowen Family Trust Dated May 5, 1982; SCOTT JEFFREY ROWEN, M.D.; PRAVIN V. SHARMA, M.D.; HAL S. SHIMAZU, M.D.; SIERRA VENTURES V, L.P., a California limited partnership; AISHA SIMJEE, M.D.; JAMES B. TANANBAUM;

ALLAN G. WEISS; DANIEL L.
WEISSBERG, M.D.; LINDA F.
WEISSBERG; LAURENCE D.
WELLIKSON, M.D.; ANGELA F.
WINTHEISER; and ALLAN WONG,
M.D.,

*Plaintiffs-Appellants,*

v.

COWEN & COMPANY, a New York
limited partnership; SG COWEN
SECURITIES CORPORATION, a New
York corporation; COWEN
COMPANY, LLC, a Delaware
limited liability company,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
November 21, 2008—San Francisco, California

Filed August 7, 2009

Before: Procter Hug, Jr., John T. Noonan, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## COUNSEL

Philip Borowsky, San Francisco, California, for the plaintiffs-appellants.

Linda Goldstein, New York, New York, for the defendants-appellees

## ORDER

Judges Hug, Noonan, and Ikuta vote to deny Cowen's petition for rehearing. Judge Ikuta votes to deny Cowen's petition for rehearing en banc, and Judges Hug and Noonan so recommend. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. *See* Fed. R. App. P. 35. Cowen's petition for rehearing and petition for rehearing en banc are therefore denied.

The opinion filed February 11, 2009, appearing at 556 F.3d 786, is hereby withdrawn. A superseding opinion will be filed simultaneously with this order. Further petitions for rehearing or rehearing en banc may be filed.

## OPINION

IKUTA, Circuit Judge:

Sixty-three shareholders brought a state-law action against an investment bank for misleading them in connection with the sale of their closely held corporation to a publicly traded acquiring corporation. The suit was removed to federal district court under the Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 ("SLUSA"), which allows for the removal and preclusion[1] of

---

[1]The Supreme Court recently explained that SLUSA precludes, rather than preempts, state law claims: "The preclusion provision is often called

"private state-law 'covered' class actions alleging untruth or manipulation in connection with the purchase or sale of a 'covered' security." *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636-37 (2006) (quoting 15 U.S.C. § 77p(b)).[2] The district court held that the suit was properly removed and precluded under SLUSA. We conclude that the district court erred by applying the wrong legal standard to determine whether Madden's suit was preserved by SLUSA's savings clause (known as the "Delaware carve-out"), and we remand to the district court so that it can apply the correct standard.

I

Charles T. Madden, along with sixty-two other individuals and entities (collectively, "Madden"), brought a state-law action in state court against Cowen & Company, SG Cowen Securities Corporation, and Cowen and Company, LLC (collectively, "Cowen"). Madden and his fellow plaintiffs, most of whom are physicians, owned a majority interest in St. Joseph Medical Corporation, which in turn owned a controlling share in Orange Coast Managed Care Services. Both St. Joseph and Orange Coast were closely held corporations. St. Joseph was incorporated in California, and Orange Coast in Delaware. The following facts are taken from the allegations in Madden's complaint:

In 1997, the management of St. Joseph and Orange Coast

a preemption provision; the Act, however, does not itself displace state law with federal law but makes some state-law claims nonactionable through the class action device in federal as well as state court." *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636 n.1 (2006).

[2]SLUSA amended section 16 of the Securities Act of 1933 ("1933 Act"), codified at 15 U.S.C. § 77p, and made a substantially identical amendment to section 28(f) of the 1934 Act, codified at 15 U.S.C. § 78bb(f). For simplicity, we follow *Kircher* and cite to the relevant provision in the 1933 Act, 15 U.S.C. § 77p, except as noted. *See* 547 U.S. at 637 n.3.

sought a buyer for the two companies and formed a "Special Committee" for that purpose. The Special Committee, which included members of the boards of directors of St. Joseph and Orange Coast, retained Cowen, an investment bank, to look for prospective buyers, give advice regarding the structure of any potential sale, and render a "fairness opinion" regarding any proposed transaction. Cowen's contract provided that it would receive a $50,000 retainer fee plus 1% of any sale price, payable in cash.

Cowen found four possible buyers, two of which are relevant here. St. Joseph's Hospital of Orange County, already a part-owner of Orange Coast, offered $40 million ($30 million in cash and a $10 million note). FPA Medical Management, a publicly traded corporation, offered shares of its stock valued at $66.5 million. Cowen recommended FPA as the buyer, and St. Joseph and Orange Coast began exclusive negotiations with FPA. In January 1998, these discussions resulted in an agreement on the terms of a merger. Under the merger agreement, FPA would acquire all outstanding shares of St. Joseph and Orange Coast. In exchange, FPA would issue shares of its stock valued at $60 million to St. Joseph and Orange Coast shareholders. Cowen concluded that this transaction would be financially fair to the shareholders of Orange Coast and St. Joseph.

On January 13, 1998, the boards of directors of Orange Coast and St. Joseph approved the merger agreement. A week later, the agreement was executed by the boards of directors of St. Joseph and Orange Coast, although it had not yet been approved by St. Joseph's and Orange Coast's shareholders. On February 5, 1998, Cowen issued a letter memorializing its fairness opinion. FPA then filed a registration statement for the new stock that it would issue to Madden under the terms of the merger agreement.[3] The registration statement, which

---

[3]A registration statement is a statutorily required document that must be approved by the SEC before an issuer can lawfully sell securities. *See SEC v. Phan*, 500 F.3d 895, 901-02 (9th Cir. Cal. 2007); *see also* Sec. & Exch. Comm'n, Securities Offering Reform, 85 S.E.C. Docket 2871, 2005 WL 1692642, *17 (Aug. 3, 2005) (discussing the pre-2005 offering process).

included Cowen's fairness letter and Cowen's consent to the inclusion of the letter in the registration statement, was approved by the Securities and Exchange Commission (SEC) on February 17, 1998. After receiving a copy of the registration statement and fairness letter, Madden voted in favor of the merger agreement. The merger became effective on March 20, 1998.

A few months later, on May 15, 1998, FPA issued a calamitous first-quarter report for 1998: earnings per share were 30 cents below expectation, and FPA's share price tumbled 75% in the next two trading days. Two months later FPA declared bankruptcy, with a share price that was approximately 0.5% of its value at the time of the merger agreement. Madden agreed with Cowen to toll the statute of limitations so that Madden could first sue FPA's management, auditor, and financial advisor in California court. Those defendants removed the action to federal district court; FPA's management settled, and the district court entered judgment in the remaining defendants' favor. We upheld the grant of summary judgment on appeal. *Madden v. Deloitte & Touche, LLP*, 118 F. App'x 150, 153-54 (9th Cir. 2004). Madden then brought the present action against Cowen in California court, alleging that Cowen committed negligent misrepresentation and professional negligence under California law. Cowen removed the action to federal district court. Applying SLUSA, the district court denied Madden's motion to remand to state court and granted Cowen's motion to dismiss. Madden timely appealed.

## II

SLUSA is part of a recent congressional attempt to rein in private securities litigation. Section 10(b) of the Securities and Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 of the SEC's regulations, 17 C.F.R. § 240.10b-5, broadly prohibit "deception, misrepresentation, and fraud in connection with the purchase or sale of any

security," *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006) (internal quotation marks omitted).[4] The Supreme Court has long recognized an implied private right of action under these provisions. *See id.* at 79 (citing *Superintendent of Ins. of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6 (1971)).

In 1995, Congress adopted "legislation targeted at perceived abuses of the class-action vehicle in litigation involving nationally traded securities." *Dabit*, 547 U.S. at 81. The Private Securities Litigation Reform Act of 1995 ("Reform Act"), 109 Stat. 737 (codified at 15 U.S.C. §§ 77z-1 and 78u-4), was intended "to deter or at least quickly dispose of" abusive class actions, particularly those alleging violations of Section 10(b), by limiting the potential liability of defendants and by requiring plaintiffs who bring private securities fraud actions in federal court to surmount a number of procedural hurdles. *See Dabit*, 547 U.S. at 81-82. However, rather "than face the obstacles set in their path by the Reform Act, plaintiffs and their representatives began bringing class actions under state law, often in state court." *Id.* at 82. In response to this unintended consequence of the Reform Act, Congress enacted SLUSA to "stem this shift from Federal to State courts and prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Reform Act." *Id.* (internal quotation marks and alterations omitted).

---

[4]Section 10(b) and Rule 10b-5 make it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance," 15 U.S.C. § 78j(b), and to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading," 17 C.F.R. § 240.10b-5(b). Because Rule 10b-5 "is coextensive with," and in fact cabined by, the scope of Section 10(b), *SEC v. Zandford*, 535 U.S. 813, 816 n.1 (2002), we refer to Section 10(b) and Rule 10b-5 collectively as "Section 10(b)."

**[1]** SLUSA sought to achieve these goals by generally precluding "covered class actions" alleging fraud or misrepresentation under state law in connection with "covered securities." SLUSA's preclusion provision states:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
>> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>>
>> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).

**[2]** The breadth of this preclusion provision is limited in several respects. It applies only to a "covered class action," which, as relevant here, is defined as an action in which "damages are sought on behalf of more than 50 persons." *Id.* § 77p(f)(2)(A)(i). The preclusion provision is also limited to actions involving a "covered security," which is defined as a security "traded nationally and listed on a regulated national exchange," *Dabit*, 547 U.S. at 83, "at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred." *Id.* § 77p(f)(3) (cross-referencing the statutory definition of "covered security" in § 77r(b)).

Additionally, SLUSA contains a savings clause that preserves certain types of state-law claims that would otherwise be subject to its preclusion provision. Relevant here is the Delaware carve-out, § 77p(d), which provides that a private

party may bring a covered class action "based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity)," *id.* § 77p(d)(1)(A), if the action involves:

> (i) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
>
> (ii) any recommendation, position, or other communication with respect to the sale of securities of the issuer that—
>
>> (I) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
>>
>> (II) concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

*Id.* § 77p(d)(1)(B).

To prevent actions precluded by SLUSA from being litigated in state court, SLUSA authorizes defendants to remove such actions to federal court, effectively ensuring that federal courts will have the opportunity to determine whether a state action is precluded.[5] As the Supreme Court has explained, any

---

[5]Section 77p(c) provides:

> Any covered class action brought in any State court involving a covered security, as set forth in subsection (b) [15 U.S.C. § 77p(b), SLUSA's preclusion provision], shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).

*Id.* § 77p(c).

suit removable under SLUSA's removal provision, § 77p(c), is precluded under SLUSA's preclusion provision, § 77p(b), and any suit not precluded is not removable. *See Kircher*, 547 U.S. at 644; *see also Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 131-32 (2d Cir. 2003) (Newman, J., concurring) (noting that SLUSA's removal and preclusion provisions are "opposite sides of the same coin"). If a federal court determines that an action is not precluded, it "has no jurisdiction to touch the case on the merits, and the proper course is to remand to the state court that can deal with it." *Kircher*, 547 U.S. at 644. Likewise, if a federal court "determines that the action may be maintained in State court pursuant to" the Delaware carve-out, "the Federal court shall remand such action to such State court." 15 U.S.C. § 77p(d)(4). We review de novo the district court's denial of a motion to remand a removed case. *See Patenaude v. Equitable Life Assur. Soc'y of the United States*, 290 F.3d 1020, 1023 (9th Cir. 2002).

## III

The question presented in this case is whether Madden's complaint, which alleged state-law claims and was filed in state court, is a covered class action that is both (1) precluded by § 77p(b) of SLUSA and (2) not saved from preclusion by the Delaware carve-out, § 77p(d).

## A

Madden's action will fall within SLUSA's preclusion provision if the action is (1) a "covered class action" (2) "based upon the statutory or common law" of any state (3) being maintained by "any private party," and if the action alleges (4) either "an untrue statement or omission of material fact" or "that the defendant used or employed any manipulative or deceptive device or contrivance" (5) "in connection with the purchase or sale" (6) of a "covered security." 15 U.S.C. § 77p(b).

**[3]** Madden does not dispute that his suit is a "covered class action," *id.* § 77p(f)(2), that his suit is based upon state law, or that the plaintiffs are private parties. It is also undisputed that Madden's suit alleges Cowen's fairness opinion contained misrepresentations and therefore qualifies as an action "alleging" either an "untrue statement or omission of material fact" or "a manipulative or deceptive device or contrivance" for purposes of § 77p(b). Thus the questions before us are: (1) whether Cowen's alleged misrepresentations were "in connection with the purchase or sale of" the FPA securities, and (2) whether those FPA securities were "covered securities" within the meaning of SLUSA.

1

**[4]** We begin by considering whether Cowen's alleged misrepresentations were "in connection with the purchase or sale of" the FPA securities. We construe the phrase "in connection with the purchase or sale" of securities in SLUSA the same way we construe it in the Section 10(b) context. *See Dabit*, 547 U.S. at 88-89. Under our Section 10(b) cases, a misrepresentation is "in connection with" the purchase or sale of securities if there is "a relationship in which the fraud and the stock sale coincide or are more than tangentially related." *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1131 (9th Cir. 2002); *accord Dabit*, 547 U.S. at 85 (noting the "broad construction adopted by both this Court and the SEC" of "in connection with"). We construe the phrase "purchase or sale" of securities to include a stock-for-stock merger. *See SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 467-68 (1969).

Madden's complaint alleges that Cowen made misrepresentations to the shareholders of St. Joseph and Orange Coast to secure their approval of the stock-for-stock merger with FPA. Specifically, the complaint alleges that Madden "relied on [Cowen's] representations because they caused Plaintiffs to vote to approve the merger transaction and to consent to receive FPA stock in place of their existing Orange Coast and

St. Joseph stock." The complaint further alleges that Madden "would not have done so absent Defendants' fairness opinion, distributed to Plaintiffs with Cowen's express consent, that the transaction was fair, from a financial point of view, to Plaintiffs as shareholders of Orange Coast and St. Joseph." As a result of approving the merger agreement, the "Plaintiffs suffered damage in the full amount of the promised value of the FPA shares they received, approximately $40 million." Finally, the complaint alleges: "Cowen could have prevented the damage to Plaintiffs if it had correctly carried out its duties, by obtaining and disclosing the information available to it that raised grave questions about FPA's financial condition, and by urging serious consideration of the cash bid by St. Joseph's Hospital of Orange. But Cowen failed to do so."

**[5]** Because the complaint alleges that Cowen made misrepresentations to the shareholders of St. Joseph and Orange Coast to secure their approval of the stock-for-stock merger with FPA, we conclude that the misrepresentations and omissions alleged in the complaint "are more than tangentially related" to Madden's "purchase" of the FPA securities. *Falkowski*, 309 F.3d at 1131. Cowen's alleged misrepresentations were therefore "in connection with the purchase or sale of" the FPA securities.

Citing *Falkowski* and *Green v. Ameritrade, Inc.*, 279 F.3d 590 (8th Cir. 2002), Madden argues that such a conclusion is erroneous because his complaint made a state-law tort claim not related to the purchase and sale of covered securities. In *Falkowski*, we considered a state-law complaint bringing two different sets of claims based on distinct factual allegations. First, the complaint made fraud claims based on allegations that the defendant employer had made misrepresentations to the employees regarding the value of the company's stock and the employees' stock options. Second, the complaint made breach-of-contract claims based on allegations that the employer had breached the employees' stock-option contract by treating the employees' options as forfeited when the

employees were transferred to another company. *See* 309 F.3d at 1127, 1131. We held that the fraud claims were precluded by SLUSA because they "involve[d] a misrepresentation about the value of the options," but that the employees could proceed with their breach-of-contract claims, which did not. *Id.* at 1131. Similarly, in *Green*, the Eighth Circuit held that SLUSA did not preclude a class action brought by an Ameritrade subscriber who alleged that "he did not receive the type of information from Ameritrade for which he believed he had contracted and paid twenty dollars monthly." 279 F.3d at 598. In both *Falkowski* and *Green*, the plaintiffs made distinct breach-of-contract claims that did not allege misrepresentations in connection with the purchase and sale of securities, and therefore such claims were not precluded by SLUSA.

According to Madden, his complaint similarly alleges a distinct state-law claim: that Cowen committed malpractice by failing to give good advice during the period when Madden was considering the cash offer from St. Joseph's Hospital of Orange County. To the extent Cowen's alleged bad advice did not relate to a transaction involving a covered FPA security, Madden argues, Cowen's professional negligence was not "in connection with" Madden's later acceptance of FPA's securities, and therefore this claim is not precluded by SLUSA.

**[6]** We disagree, because Madden's complaint cannot be read as making a distinct claim that Cowen committed professional negligence by failing to advise Madden to take the cash offer. Rather, the complaint references the offer from St. Joseph's Hospital of Orange County only to highlight Cowen's error in promoting the FPA offer as a better alternative. Indeed, the complaint claims damages measured by "the full amount of the promised value of the FPA shares" rather than by the lost value of the cash offer or the fees paid Cowen. Because Madden's complaint does not allege a state-law professional negligence claim distinct from Madden's central allegation that Cowen's misrepresentations resulted in

Madden's purchase of the FPA securities, we reject Madden's argument that we must construe all or part of his complaint as raising a distinct state-law claim not precluded by SLUSA.

2

**[7]** Having determined that Madden's action meets the requirement that it allege a misrepresentation "in connection with the purchase and sale" of the FPA securities, we must next address whether the FPA securities were "covered securit[ies]" as defined in § 77p(f)(3). Section 77p(f)(3) defines a "covered security" as one that (1) "satisfies the standards for a covered security" (2) "at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred." 15 U.S.C. § 77p(f)(3). The first prong of this definition is explained in § 77r(b)(1)(A): any security "listed, or authorized for listing, on the . . . Nasdaq Stock Market" satisfies the standards for a covered security. Id. § 77r(b)(1)(A). In order to interpret the second prong correctly, we must read the definition of "covered security" in § 77p(f)(3) in light of SLUSA's preclusion provision in § 77p(b). Specifically, we must determine whether the complaint alleges an "untrue statement or omission of material fact" or "a manipulative or deceptive device or contrivance" in connection with the purchase or sale of a security, *id.* § 77p(b), where that security "[1] satisfies the standards for a covered security . . . [2] at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred," *id.* § 77p(f)(3).

**[8]** The parties agree that the FPA securities "satisf[y] the standards for a covered security" as of February 17, 1998. The parties do not dispute that on that date the FPA securities were registered with the SEC and authorized for listing on the Nasdaq Stock Market. We therefore turn to the temporal element of the definition of "covered security," i.e., whether the securities were registered at the time the alleged misrepresentation "occurred." Because the verb, "occurred," is not

defined in the statute, we look to the word's plain meaning. *See Ariz. Health Care Cost Containment Sys. v. McClellan*, 508 F.3d 1243, 1249 (9th Cir. 2007). The dictionary defines "occur" to mean, among other things, to "present itself," "come to pass," or "take place." Webster's Third New Int'l Dictionary 1561 (2002). Accordingly, the FPA securities will meet the temporal element of "covered securit[ies]" under SLUSA if Madden's complaint alleges that Cowen's misrepresentation in connection with the purchase or sale of those securities took place at a time during which the securities were authorized for listing on the NASDAQ stock market.

**[9]** We conclude that the FPA securities satisfy this definition. Madden's complaint alleges that Cowen wrote a misleading fairness opinion that was then included in the registration statement for the FPA securities. The complaint further alleges that this registration statement was circulated to St. Joseph and Orange Coast shareholders after the FPA securities were registered with the SEC on February 17, 1998. Madden does not dispute that the publication of Cowen's allegedly misleading fairness opinion in the FPA securities' registration statement constituted an (alleged) "misrepresentation." Madden's complaint therefore alleges that a misrepresentation (i.e., the publication of Cowen's allegedly misleading fairness opinion in the registration statement) took place after the FPA securities were registered. Also, for the reasons explained above, this misrepresentation was "in connection with" Madden's purchase of the FPA securities after they became registered. Because Madden's complaint alleges that Cowen's misrepresentation "occurred" during a period when the FPA securities satisfied the standards for "covered securit[ies]" under 15 U.S.C. § 77r(b)(1)(A), we conclude that the FPA securities were "covered securit[ies]" under SLUSA.

Madden, however, argues that no misrepresentation occurred for purposes of § 77p(f)(3), because Cowen is not liable for the publication of its fairness opinion in the FPA securities' registration statement. According to Madden,

Cowen cannot incur liability for this misrepresentation because publication in the registration statement constituted "non-culpable repetition by Orange Coast and St. Joseph of misrepresentations that Cowen had made before that time." Madden relies on the tort-law doctrine of "indirect deception" to support this theory, citing *Shapiro v. Sutherland*, 64 Cal. App. 4th 1534, 1548 (Cal. App. 2d Dist. 1998). Under *Shapiro*, a person who makes a misrepresentation to a party who then repeats it to a third party is not liable to the third party unless "the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved." *Id.* (quoting Restatement (Second) Torts § 533).

**[10]** We disagree. To begin with, Madden's complaint alleges that Cowen expressly consented to the inclusion of its fairness opinion in the FPA registration statement, and the fairness opinion squarely recommended that the proposed merger was fair to Madden as a shareholder of St. Joseph and Orange Coast. If *Shapiro*'s doctrine of indirect deception applies to federal securities law,[6] then Cowen could be held liable if the complaint's allegations are true, because Cowen would have reason to expect that the terms of the fairness opinion would be repeated to Madden and that they would influence Madden's conduct in the merger. Moreover, Madden offers no support for his assumption that a misrepresentation occurs under § 77p(f)(3) only if the defendant can be held liable for the misrepresentation. Nothing in the definition of "covered security" in § 77p(f)(3) involves a liability determination or requires a court to evaluate the merits of a plaintiff's claim that a defendant is liable for the misrepresentation. Under the plain language of § 77p(f)(3), a security may meet

---

[6]We note that the construction of federal securities law is a matter of federal, not state law, *see Thompson v. Paul*, 547 F.3d 1055, 1061 (9th Cir. 2008), and so Cowen's reliance on *Shapiro* is relevant only to the extent that case informs federal law regarding securities fraud.

the definition of "covered security" so long as the security was listed on the NASDAQ at the time the defendant's alleged misrepresentation occurred, regardless of the merits of the plaintiff 's claim based on that misrepresentation.

**[11]** We have already explained why the publication of Cowen's allegedly misleading fairness opinion in the FPA securities' registration statement was a misrepresentation "in connection with" Madden's purchase of the FPA securities. 15 U.S.C. § 77p(b). Whether or not Cowen is liable for this misrepresentation, it is undisputed that this alleged misrepresentation took place after the FPA securities "satisfie[d] the standards for a covered security specified" in § 77r(b). We therefore conclude that the FPA securities were "covered securit[ies]" under SLUSA, *id.* § 77p(f)(3), and that Cowen's action is precluded under SLUSA unless the Delaware carve-out applies. In light of this conclusion, we need not address Cowen's alternative argument that Madden is collaterally estopped from arguing that the FPA securities were not "covered securities" by our memorandum disposition in *Madden v. Deloitte & Touche, LLP*, 118 F. App'x 150 (9th Cir. 2004).

B

**[12]** Madden alternatively argues that his suit survives SLUSA's preclusion provision, § 77p(b), because it falls within a subsection of the Delaware carve-out, § 77p(d)(1)(B)(ii). For Madden's suit to qualify under this subsection, it must (1) involve a "communication with respect to the sale" of the issuer's securities and (2) be "based on the law of the" state in which "the issuer" is incorporated; the communication also must have been (3) "made by or on behalf of" the issuer or its affiliate (4) to the shareholders of the issuer (5) "concern[ing]" specified shareholder decisions, including a "response to a tender or exchange offer." 15 U.S.C. § 77p(d)(1)(A), (B)(ii).

Madden asserts that Cowen's allegedly misleading fairness opinion is a "communication with respect to the sale" of St.

Joseph's and Orange Coast's securities. According to Madden, St. Joseph and Orange Coast are "issuer[s]" under § 77p(d)(1)(B)(ii) because they were the issuers of the securities that were sold to FPA in response to FPA's exchange offer. Madden further argues that because he brought his negligent misrepresentation and professional negligence claims under the law of California, the state of incorporation of St. Joseph, and because such claims are also recognized in Delaware, the state of incorporation of Orange Coast, his suit is "based on the law of the" states in which both St. Joseph and Orange Coast are incorporated. Finally, Madden argues that Cowen's fairness opinion was a communication "made by or on behalf of" St. Joseph and Orange Coast to their shareholders concerning the shareholders' response to FPA's exchange offer, because Cowen was retained by St. Joseph's and Orange Coast's management to make such a communication.

Cowen disputes Madden's arguments as follows: First, Cowen argues that neither St. Joseph and Orange Coast are "issuers" within the meaning of the Delaware carve-out. Second, Cowen argues that Madden's action is not "based on the law of" Delaware, the state in which Orange Coast is incorporated. Third, Cowen argues that it was not acting "on behalf of" either Orange Coast or St. Joseph when it provided its fairness opinion. We consider each of these issues in turn.

1

Cowen first argues that neither St. Joseph nor Orange Coast is "the issuer" for purposes of the Delaware carve-out because neither was the issuer of the "covered security" in this case. According to Cowen, only FPA can be "the issuer" for purposes of the Delaware carve-out. Cowen reasons that the Delaware carve-out, § 77p(d), refers to "*the* issuer" rather than "*an* issuer," and contends that "the issuer" must refer to the issuer of the "covered security" referred to in SLUSA's preclusion provision, § 77p(b). Otherwise, Cowen argues, the definite article in "the issuer" would have no antecedent.

Cowen also notes that in *Dabit* the Supreme Court described the Delaware carve-out as applying to "class actions based on the law of the State in which the issuer *of the covered security* is incorporated." 547 U.S. at 87 (emphasis added). Under Cowen's interpretation of § 77p(d), the Delaware carve-out would apply only to FPA and not to St. Joseph, which as a closely held corporation was not an issuer of covered securities. In this case, Cowen argues, the Delaware carve-out would preserve only suits involving communications to FPA shareholders concerning their decisions in voting their FPA securities. Because Madden's action does not involve communications to FPA shareholders, Cowen argues that the Delaware carve-out is inapplicable to Madden's suit.

**[13]** We disagree. As noted above, we start with the plain language of the statute. *See Ariz. Health Care*, 508 F.3d at 1249. The Delaware carve-out does not use the phrase "issuer of the covered securities." Rather, the Delaware carve-out refers only to "securities" or "equity securities." 15 U.S.C. § 77p(d)(1)(B). SLUSA does not define the word "issuer" to mean "issuer of the covered securities," nor does SLUSA's preclusion provision, § 77p(b), refer to an "issuer of covered securities" or any similar phrase. Thus, contrary to Cowen's argument, there is no clear antecedent to the phrase "the issuer" in the Delaware carve-out. Moreover, the significance of the word "the" before "issuer" in the version of the Delaware carve-out added to the 1933 Act is questionable, given that SLUSA's nearly identical Delaware carve-out in the 1934 Act refers to both "the issuer" and "an issuer." *See* 15 U.S.C. § 78bb(f)(3)(A)(ii)(II) (providing that the Delaware carve-out applies to a covered class action that involves "any recommendation, position, or other communication with respect to the sale of securities of *an issuer*" that meets certain criteria) (emphasis added). If the choice of the word "the" instead of "an" had substantive meaning, we would expect that the word "the" would have been used consistently in two otherwise identical amendments. *Cf. Kircher*, 547 U.S. at 637 n.3 (noting that SLUSA amends the 1933 Act and 1934 Act "in sub-

stantially identical ways"). Accordingly, we conclude that the plain language of § 77p(d) allows a shareholder to bring a covered class action under state law against any "issuer" that has made certain communications regarding the sale of its "securities," and that these securities need not be the "covered securit[ies]" referred to in § 77p(b). Also, though we do not rely on legislative history in construing this unambiguous statutory language, *see Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004), we note our disagreement with Cowen's argument that SLUSA's legislative history suggests a congressional intent to limit the Delaware carve-out to suits against issuers of "covered securities." The public debate surrounding Congress's addition of the Delaware carve-out weighs against Cowen's interpretation. The testimony before Congress when it inserted the Delaware carve-out into SLUSA suggests that the purpose of § 77p(d) was to preserve state-law actions brought by shareholders against their own corporations in connection with extraordinary corporate transactions requiring shareholder approval, such as mergers and tender offers, regardless whether the corporations issued nationally traded securities.[7]

---

[7]*See, e.g.*, *Securities Litigation Uniform Standards Act of 1997: Hearing on S. 1260 Before the S. Comm. on Banking, Housing, and Urban Affairs, Subcomm. on Securities*, 105th Cong. 48 (Oct. 29, 1997) (statement of SEC Chairman Arthur Levitt and Commissioner Isaac Hunt, Securities and Exchange Commission) (expressing concern that the version of SLUSA originally introduced in the Senate "could preempt state class actions for damages based on material misstatements or omissions in proxy and tender offer materials in connection with an extraordinary corporate transaction"); *Securities Litigation Uniform Standards Act of 1997: Hearing on H.R. 1689 Before the H. Comm. on Commerce, Subcomm. on Finance and Hazardous Materials*, 105th Cong. 64 (May 19, 1998) (testimony of Jack Coffee) (noting the important role of state class actions in the area of mergers and corporate reorganization and approving of the Senate's addition of the Delaware carve-out as an "attempt[ ]" to "carve back into the statute a role for the Delaware courts, and the courts of other States, to deal with fundamental questions of corporate governance").

Nor does the Supreme Court's passing reference in *Dabit* to one type of class action covered by the Delaware carve-out require us to adopt a different reading. *See* 547 U.S. at 87 (noting that the Delaware carve-out applies to "class actions based on the law of the State in which the issuer of the covered security is incorporated"). In context, the Court's reference to the Delaware carve-out in Dabit is simply part of the Court's explanation that "the tailored exceptions to SLUSA's pre-emptive command demonstrate that Congress did not by any means act 'cavalierly' " in displacing state law. *Id. Dabit* did not purport to limit the scope of the Delaware carve-out to covered securities; it neither considered nor addressed whether the Delaware carve-out preserves state-law shareholder class actions against issuers of securities that are not nationally traded.

**[14]** Finally, interpreting the Delaware carve-out as Cowen suggests would have illogical results. Under Cowen's narrow interpretation of "the issuer," the Delaware carve-out would not preserve shareholders' state-law remedies against their own corporation for misrepresentations in connection with a merger if the shareholders' corporation exchanged its non-covered securities for covered securities. The Delaware carve-out would, however, potentially apply in other types of mergers (e.g., if the corporation exchanged covered for covered securities or covered for non-covered securities), and SLUSA's preclusion provision would not apply at all if the corporation exchanged non-covered for non-covered securities. This result is unreasonable and inconsistent with the Delaware carve-out's purpose. Given that the plain language of the statute leads to "a rational, common-sense result," *Ariz. State Bd. for Charter Schools v. U.S. Dept. of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006), and one consistent with the statute's purpose, we read the term "the issuer" in the Delaware carve-out to refer to the corporation that is the issuer of the securities described in the Delaware carve-out, rather than being limited to an issuer of a "covered security" defined in 15 U.S.C. § 77p(f)(3). Accordingly, both Orange Coast and

St. Joseph could potentially be "the issuer" on whose behalf Cowen made its alleged misstatements.

2

Alternatively, Cowen argues that even if St. Joseph could be the relevant issuer for purposes of the Delaware carve-out, Orange Coast cannot. Cowen argues that because Madden's suit was brought in California and based on California law, it cannot be "based upon the statutory or common law of" Delaware, "the State in which [Orange Coast] is incorporated." *Id.* § 77p(d)(1)(A). But Madden claims that his action against Cowen is "based upon the statutory or common law of" Delaware. *Id.* According to Madden, he may meet this requirement merely by establishing that Delaware allows shareholders of acquired companies to bring negligent misrepresentation and professional negligence actions against the responsible parties. In short, Madden argues that, for purposes of SLUSA, an action is "based upon" the law of any state in which the action's claims would be cognizable.

**[15]** We reject Madden's argument as inconsistent with SLUSA's statutory language. Madden's complaint is not based on "the statutory or common law" of Delaware merely because Madden could have brought a similar complaint in Delaware. Madden's complaint alleges only violations of California law, and does not refer to Delaware law or contain any claims for violations of Delaware law. Nor does Madden suggest that a California court should apply Delaware law to its action. A plaintiff suing in a California court bears the burden of "invok[ing] the law of a jurisdiction other than California," *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001), and Madden did not invoke Delaware law in his complaint.

**[16]** Because claims are not "based on" the law of a state when they do not refer to or rely on that state's common or statutory law, the Delaware carve-out does not preserve Mad-

den's action to the extent it involves misrepresentations made solely on behalf of Orange Coast.[8] We therefore must address whether Cowen's alleged misstatements to St. Joseph's shareholders were made "on behalf of" St. Joseph, a California corporation.

3

Cowen argues that even if St. Joseph is deemed to be "the issuer" for purposes of the Delaware carve-out, Cowen did not make any statement "on behalf of" St. Joseph. Because the Delaware carve-out applies to misleading communications "made by or on behalf of" an issuer to its shareholders, Cowen asserts that Madden's complaint does not fall within the Delaware carve-out. *See* 15 U.S.C. § 77p(d)(1)(B)(ii)(I).

The district court agreed, holding that a defendant makes a statement "on behalf of" an issuer for purposes of the Delaware carve-out only if the defendant was an officer, director, or employee of the issuer. In support of the district court's holding, Cowen points us to the Reform Act, which defines the phrase "person acting on behalf of an issuer" to mean "an officer, director, or employee of the issuer." *Id.* § 77z-2(i)(6). Cowen argues that it did not act on behalf of St. Joseph because it is not an "officer, director or employee" of St. Joseph.

Madden counters that we should not rely on the Reform

---

[8]As noted above, the Delaware carve-out also applies to communications that are "made by or on behalf of . . . *an affiliate* of the issuer to holders of equity securities of the issuer." 15 U.S.C. § 77p(d)(B)(ii)(I) (emphasis added). But Madden does not argue that Cowen's alleged misrepresentations qualified under § 77p(d)(B)(ii)(I) as a communication made "by or on behalf of" Orange Coast as "an affiliate" of St. Joseph, and so we do not address this issue here. *See Ind. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot manufacture arguments for an appellant . . . ." (internal quotation marks omitted)).

Act, which provided the definition of "on behalf of" in the context of creating a safe harbor for those who make forward-looking statements. Rather, Madden argues, we should rely on the plain language of the statute, or alternatively on the SEC's regulations implementing the National Securities Market Improvement Act, which provide that an offering document is "prepared by or on behalf of the issuer" if the issuer: "(1) Authorizes the document's production, and (2) Approves the document before its use." 17 C.F.R. § 230.146(a). Madden claims that this definition is preferable because it relates to offering documents such as the registration statement at issue in this case. *See* 15 U.S.C. § 77r.

**[17]** Again, we must start with the plain language of the statute. *See Ariz. Health Care*, 508 F.3d at 1249. Because there is no definition of the phrase "on behalf of" in SLUSA itself, "we consider whether there is an unambiguous common sense meaning of the word that resolves the question" before us. *Id.* The common sense meaning of "on behalf of," according to the dictionary, is "in the interest of," "as a representative of," or "for the benefit of." Webster's Third New Int'l Dictionary 198 (2002). Because the language in § 77p(d)(B)(ii)(I) has an unambiguous, common sense meaning, we see no need to look to other statutes that Congress chose not to cross-reference. Accordingly, we conclude that § 77p(d)(B)(ii)(I) refers to an individual or entity that makes a communication to an issuer's stockholders in the interest of, as a representative of, or for the benefit of the issuer.

**[18]** According to Madden's complaint, the management of both Orange Coast and St. Joseph formed a Special Committee to "assess the opportunities for a strategic affiliation or sale," and it was through this Special Committee that "Orange Coast and St. Joseph had retained Cowen for the purpose of determining whether the transaction was fair, from a financial point of view, to Plaintiffs as the shareholders of Orange Coast and St. Joseph." The complaint further alleges that the boards of directors of both Orange Coast and St. Joseph

approved the merger on the basis of Cowen's fairness opinion, that Cowen allowed its fairness opinion to be incorporated in the registration statement that was distributed to St. Joseph's shareholders, and that St. Joseph's shareholders relied on the fairness opinion when voting in favor of the merger. Under the common sense definition of "on behalf of," discussed above, Madden's complaint sufficiently alleges that Cowen's communication was "on behalf of" St. Joseph for purposes of the Delaware carve-out.

Cowen argues that we should not rely only on the allegations in Madden's complaint when the record contains a number of relevant documents supporting Cowen's argument that it was acting exclusively on behalf of Orange Coast. Specifically, Cowen points to its engagement letter, which defines Orange Coast as "the company" to which Cowen would, if requested, "render an opinion as to whether or not the financial terms of" a proposed transaction were fair. Cowen also points to the fact that the fairness opinion itself was addressed to Orange Coast, not St. Joseph or the Special Committee, and that the registration statement instructed Orange Coast's shareholders to read the fairness opinion but made no similar instruction addressed to St. Joseph's shareholders.

We agree with Cowen that our inquiry as to whether Cowen was acting on behalf of St. Joseph is not limited to the allegations in Madden's complaint. We have held that a "court may permit the defendant to support removal by supplementing the pleadings with additional evidence of SLUSA's applicability," *U.S. Mortgage, Inc. v. Saxton*, 494 F.3d 833, 842 (9th Cir. 2007) (emphasis omitted), consistent with the general rule that a removing defendant bears the burden of showing that it is properly in federal court, *see Abrego Abgrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

[19] Here, the district court did not consider these additional documents because it applied the wrong legal standard

for determining whether Cowen's communication was made "on behalf of" an issuer for purposes of the Delaware carve-out, asking whether Cowen was "an officer, director, or employee of St. Joseph or Orange Coast." As we have explained, the correct inquiry is whether Cowen's fairness opinion was a communication "on behalf of" St. Joseph within the ordinary meaning of the phrase: that is, whether the communication was made in the interest of, as a representative of, or for the benefit of St. Joseph. Because a district court "may permit the defendant to support removal by supplementing the pleadings with additional evidence of SLUSA's applicability," *Saxton*, 494 F.3d at 842 (emphasis omitted), and because a district court has the discretion to allow or not allow additional jurisdictional discovery, *Abrego Abrego*, 443 F.3d at 692, we remand to the district court so it can exercise its discretion, apply the correct legal standard, and determine, in the first instance, whether Cowen's fairness opinion constituted a communication "on behalf of" St. Joseph.

4

In light of our decision to remand this case to the district court, we must also address the parties' dispute over who bears the burden of proving that Madden's action is preserved by the Delaware carve-out. In our decisions applying the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005), we have held that when a defendant removes a case to federal court, the defendant bears the burden of proving any prerequisites to federal jurisdiction, while the plaintiff bears the burden of proving the existence of any "exceptions" to the exercise of jurisdiction that "otherwise exists." *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020 & n.3 (9th Cir. 2007). Applying this framework to SLUSA, we must determine whether eligibility for the Delaware carve-out is a prerequisite or exception to the district court's exercise of jurisdiction.

**[20]** This question is answered by the Supreme Court's recent decision in *Kircher*, where the Supreme Court clarified that a district court's jurisdiction under SLUSA extends only to actions that are not precluded. Kircher, 547 U.S. at 644. As we previously noted, *Kircher* explained that "if the action is precluded, neither the District Court nor the state court may entertain it, and the proper course is to dismiss. If the action is not precluded, the federal court likewise has no jurisdiction to touch the case on the merits, and the proper course is to remand to the state court that can deal with it." *Id.* According to the Court, "[t]here is no room for . . . a case to exist in a limbo of colorable preclusion; if a claim is precluded, it may not be maintained, and if the claim is not, the federal courts no longer have any business being involved, as there is no longer any federal question on which to moor the district court's jurisdiction." 547 U.S. at 644 n.12 (alteration and internal citation omitted).[9]

Accordingly, under *Kircher*, the district court has jurisdiction over Madden's complaint under SLUSA's removal provision only if the action is precluded. Madden's complaint is not subject to preclusion if it is preserved by the Delaware carve-out. Thus the district court has jurisdiction over Madden's complaint only if the Delaware carve-out is *not* applicable. Said otherwise, the non-applicability of the Delaware carve-out is a prerequisite to the district court's SLUSA jurisdiction. Because a removing defendant generally bears the burden of showing that it is properly in federal court, *see Abrego Abrego*, 443 F.3d at 685, Cowen bears the burden of proving that the Delaware carve-out is not applicable to Madden's complaint.

---

[9]This analysis assumes, as was the case in *Kircher*, that there is no separate basis for federal jurisdiction over the merits of the action. A state-law diversity action, for example, might be properly brought in federal court under 28 U.S.C. § 1332, in which case a federal court could reach the merits of the action if it were not precluded by SLUSA. *See, e.g.*, *Dabit*, 547 U.S. at 75.

Cowen disagrees with this conclusion. It argues that the applicability of the Delaware carve-out is an exception to jurisdiction, and therefore Madden bears the burden of showing its applicability. Specifically, Cowen points to the language of SLUSA that instructs a federal court to remand an action to state court if the district court determines that the Delaware carve-out is applicable. 15 U.S.C. § 77p(d)(4) ("In an action that has been removed from a State court pursuant to subsection (c), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court."). According to Cowen, this language demonstrates that a federal court has jurisdiction over a covered class action meeting the requirements of § 77p(b), but must nonetheless remand to state court under § 77p(d)(4) if the Delaware carve-out is applicable.

This reading of § 77p(d), which would make the Delaware carve-out an exception to jurisdiction rather than a prerequisite, is reasonable. Indeed, the Seventh Circuit adopted a similar reading of SLUSA in an analogous context, holding that once a federal court has removal jurisdiction over an action under SLUSA, it then has "adjudicatory competence" to consider the applicability of the Delaware carve-out and remand if necessary. *Kircher*, 373 F.3d 847, 850 (7th Cir. 2004), *rev'd*, 547 U.S. 633 (2006). If the carve-out is applicable, the court reasoned, then the federal court does not dismiss for lack of subject-matter jurisdiction but simply finishes its work and "bow[s] out" by remanding the complaint to state court. *Id.*

The trouble with this reasoning is that it was rejected by the Supreme Court, which reversed the Seventh Circuit's decision in *Kircher*. The Supreme Court clarified that SLUSA gives a federal court authority to do only two things with a removed action: dismiss it as precluded or remand it to state court. 547 U.S. at 644. Under *Kircher*, there can be no "limbo of colorable preclusion," *id.*, in which a district court obtains jurisdic-

tion over a complaint that meets the preclusion standards of
§ 77p(b) but must then exercise its jurisdiction by "bow[ing]
out" under § 77p(d)(4) if the complaint falls within the Dela-
ware carve-out.

**[21]** We conclude that the reasoning of *Kircher* does not
allow us to hold that the Delaware carve-out is an exception
to jurisdiction that otherwise exists. *See Serrano*, 478 F.3d at
1020 n.3. We therefore hold that the non-applicability of the
Delaware carve-out is a prerequisite to the district court's
removal jurisdiction. *Id.* As such, on remand, Cowen must
bear the burden of establishing that Madden's action is pre-
cluded because the Delaware carve-out does not apply.[10]

### IV

In sum, we conclude that Madden's suit is a covered class
action alleging a misrepresentation in connection with a cov-
ered security under 15 U.S.C. § 77p(b). Because Madden
brought his action under California law, rather than Delaware
law, the Delaware carve-out does not preserve Madden's suit
to the extent it involves misrepresentations made on behalf of
Orange Coast. In light of our clarification of the meaning of
"on behalf of" under the Delaware carve-out, we remand this
case to allow the district court to determine, in the first
instance, whether Madden's action involves a communication
made by Cowen on behalf of St. Joseph to St. Joseph's share-
holders. *See* 15 U.S.C. § 77p(d).

The judgment of the district court is therefore **VACATED**
and the case **REMANDED** for further proceedings consistent
with this opinion.

---

[10]Because we remand to the district court to determine whether it has
jurisdiction, we do not reach Cowen's argument that Madden lacks stand-
ing under California state law to bring his professional negligence claim.