Robert GRAY, and XRGX Corporation, Individually and as representatives of a class of other persons similarly situated, Plaintiffs–Appellees,

v.

SEABOARD SECURITIES, INC., Deutsche Bank Alex. Brown Inc., and Vincent Danna, Defendants–Appellants.

No. 03–7184–CV.

United States Court of Appeals, Second Circuit.

March 9, 2005.

Richard B. Harper, McCarter & English (Seth T. Taube, Tara C. Prigge, McCarter & English, Christopher P. Hall, Morgan, Lewis & Bockius, LLP, New York, NY, on the brief), Newark, NJ, for Appellants.

Kenneth McCulloch, c/o Ballard, Rosenberg, Golper & Savitt, LLC, New York, NY, for Appellees.

Christopher Paik, Special Counsel (Giovanni P. Prezioso, General Counsel, Jacob H. Stillman, Solicitor, on the brief; Meyer Eisenberg, Deputy General Counsel), Securities and Exchange Commission, Washington, DC, for Amicus Curiae Securities and Exchange Commission, of counsel.

Present: SACK, SOTOMAYOR, and RAGGI, Circuit Judges.

■ We assume familiarity with the procedural history of this case and with the allegations in plaintiffs' complaint. *See Gray v. Seaboard Sec. Inc.*, 241 F.Supp.2d

213 (N.D.N.Y.2003). On this appeal, defendants argue (1) that the relevant preemptive provision of the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f), requires dismissal of entire actions that include one or more pre-empted claims; and (2) that the district court erred in finding that certain of Gray's putative class claims were not SLUSA-preempted. We reject the first claim but agree with the second, and reverse so much of the judgment of the district court as defendants appeal from.

We review *de novo* a district court's failure to dismiss a claim under Rule 12(b)(6). *Curto v. Edmundson*, 392 F.3d 502, 503 (2d Cir.2004) (per curiam). Our recent decision in *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir.2005), disposes of defendants' contention that the presence of one or more preempted claims in a complaint *ipso facto* requires dismissal of the entire action under SLUSA: we held there that claim-by-claim analysis of the kind the district court undertook here is appropriate. *Dabit*, 395 F.3d at 47. As to the merits of that claim-by-claim analysis, *Dabit* similarly controls our disposition of this case.

█ As to plaintiffs' common-law fraud claim relating to their decision to do business with defendants,[1] the district court held that the alleged misrepresentations were not "in connection with" the purchase or sale of securities within the meaning of SLUSA because they related to plaintiffs' "decision to do business with Defendants, not their decisions to buy or sell specific securities." 241 F.Supp.2d at 220; *see also id.* at 221–22. In fact, the complaint specifically alleges that defendants' misrepresentations about the source of their investment advice were intended to and did cause plaintiffs and the putative class members to pay premium brokerage commissions—commissions which accrued only upon the purchase or sale of securities. We held in *Dabit* that such claims are preempted by SLUSA because they allege misstatements "in connection with" the purchase or sale of securities as that term was interpreted by the Supreme Court in *SEC v. Zandford*, 535 U.S. 813, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002). *See Dabit*, 395 F.3d at 48–49 (citing *Zandford*, 535 U.S. at 820, 825); *accord Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 299–300 (3d Cir.2005) (holding that SLUSA preempts claims which allege a material misrepresentation or omission in connection with the purchase or sale of securities whether or not that allegation is an element of or otherwise necessary to the putative state claim).[2]

1. The district court dismissed some of plaintiffs' claims as SLUSA-preempted (including statutory and common-law claims for fraud in the inducement to trade certain securities) but found that SLUSA did not preempt Gray's claims for (1) fraud in the inducement to enter into contractual relations with defendants in violation of New York General Business Law § 349; (2) common-law breach of contract involving the provision of nonconforming investment advice, including a claim for consequential damages consisting of investment losses occasioned by that breach; (3) common-law fraud in the inducement to enter into contractual relations with defendants; and (4) negligence and negligent supervision. *Gray*, 241 F.Supp.2d at 220–22.

Because the statutory fraud claim relating to plaintiffs' decision to do business with defendants has since been dismissed by the state court for failure to state a claim, defendants have abandoned their appeal of this portion of the district court's judgment as moot.

2. The Securities and Exchange Commission as *amicus curiae* argues, consistent with this Court's analysis in *Dabit*, that misrepresentations as to the source of investment advice which induce and cause damages through subsequent transactions in securities satisfy the "in connection with" requirement under *Zandford*. As we noted in *Dabit*, when interpreting SLUSA we defer to the views of the SEC, an informed observer of private securi-

■ The contract and negligence claims fare no better. While Gray correctly notes that the fact that a party is in the securities trading business does not necessarily entail that any class-action claim for breach of contract against that party is preempted under SLUSA, *see, e.g., Green v. Ameritrade, Inc.*, 279 F.3d 590, 598–99 (8th Cir.2002), we established in *Dabit* that SLUSA preemption *is* triggered where the breach consists of the provision of investment advice that does not conform to the contract and "[t]he commissions giving rise to the claimed breach of contract ... only accrued when plaintiffs purchased or sold securities through" the defendant. *Dabit*, 395 F.3d at 49. Just as in the claim at issue in *Dabit*, "the [alleged] breach of contract [in this case] ... consisted precisely of the provision of ... investment advice" that purported to be something it was not, *id.* at 49 n. 18; just as in *Dabit*, the breach caused damages through transactions in securities.[3] The claim therefore alleges a misrepresentation in connection with the purchase or sale of a security. Finally, the complaint makes clear that the negligence claim is premised on precisely the same allegations of material misrepresentations regarding the source of investment advice in connection with the purchase and sale of securities, including that plaintiffs were injured when defendants "did not use the recommendations of Alex. Brown as a basis for making the recommendations to plaintiffs," "recommended ... securities ... for purchase or sale ... based on what was good for Seaboard and themselves, and without regard to what was good for plaintiffs," and that management fostered a "total disregard for the recommendations that were being made by Alex. Brown" in Seaboard's provision of investment advice. It is therefore preempted by SLUSA. *See Rowinski*, 398 F.3d at 299–300; *cf. Zandford*, 535 U.S. at 822 (holding that the "in connection with" requirement of Rule 10b–5 was satisfied where investors "were injured as investors through respondent's deceptions" and the "scheme to defraud and the sale of securities coincide[d]").

For the foregoing reasons, we hold that all of plaintiffs' claims are preempted by SLUSA and the judgment of the district court is REVERSED to the extent appealed from. The case is REMANDED to the district court to dismiss plaintiffs' remaining claims.

---

ties litigation, only to the extent that its views are inherently persuasive, but we do not extend *Chevron*-style deference because the SEC is not charged with SLUSA's administration or interpretation. *Dabit*, 395 F.3d at 34 n. 6 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). However, where the SEC interprets the meaning of the phrase "in connection with" as employed in Rule 10b–5, 17 C.F.R. § 240.10b–5, we defer to its views if reasonable. *Id.* at 50 n. 19. Because the meaning of "in connection with" in SLUSA and Rule 10b–5 is the same, *see Dabit*, 395 F.3d at 34–36, we defer to the SEC's view in this case as a reasonable interpretation of the "in connection with" language.

3. The *Dabit* panel noted in passing that the district court's conclusion in *Gray* that the breach of contract claim did not require any allegation concerning a material misrepresentation or omission distinguished the case from the situation of a party in *Dabit* who sought damages in part based on transaction-based commissions and who implicitly alleged that the breach of contract consisted of the provision of biased investment advice. *See Dabit*, 395 F.3d at 49 n. 18 (citing *Gray*, 241 F.Supp.2d at 220–21). The *Dabit* panel had no occasion to, and did not, pass on the validity of the district court's conclusion in *Gray*. Now that the question of the nature of the breach alleged by Gray is squarely before us, we find that *Dabit* is materially indistinguishable.