# United States Court of Appeals
## For the First Circuit

No. 13-1574

EDUARDO HIDALGO-VÉLEZ, ET AL.,

Plaintiffs, Appellants,

v.

SAN JUAN ASSET MANAGEMENT, INC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Steven J. McAuliffe, U.S. District Judge[*]]
[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Thompson and Selya, Circuit Judges,
and McConnell, District Judge.[**]

Luis A. Avilés, with whom Jorge M. Izquierdo-San Miguel and Izquierdo-San Miguel Law Offices, PSC were on brief, for appellants.

Eric Pérez-Ochoa, with whom Adsuar Muñiz Goyco Seda & Pérez-Ochoa, P.S.C. was on brief, for appellees San Juan Asset Management, Inc. and Vizcarrondo-Ramírez de Arellano.

Michael S. Flynn, with whom Francisco G. Bruno-Rovira, Leslie Yvette Flores-Rodriguez, McConnell Valdes LLC, Alicia L. Chang, and Davis Polk & Wardwell LLP were on brief, for appellee PricewaterhouseCoopers, LLP (whose brief was adopted by appellees Puerto Rico & Global Income Target Maturity Fund, Inc., Luis Rivera, Rivera Casiano, Lugo-Rivera, and Colón Ascar).

---

[*]Of the District of New Hampshire, sitting by designation.

[**]Of the District of Rhode Island, sitting by designation.

July 9, 2014

**SELYA, Circuit Judge.** This case requires us to trace the contours of the "in connection with" element of the Securities Litigation Uniform Standards Act of 1998 (SLUSA), 15 U.S.C. § 78bb(f), in the reflected light of the Supreme Court's recent decision in Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058 (2014). Giving full voice to Troice, we conclude that the district court impermissibly extended the SLUSA's reach. Accordingly, we vacate the judgment below, reverse the denial of the plaintiffs' motion to remand, and remit the case to the district court with directions to return it to the Puerto Rico Court of First Instance.

## I. BACKGROUND

We begin at the beginning, rehearsing the origin and travel of the case. Because "this appeal follows the granting of a motion to dismiss, we draw the relevant facts from the plaintiff[s'] complaint," supplemented by "documentation incorporated by reference in the complaint." Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 388 (1st Cir. 2014).

The plaintiffs are mostly investors in the Puerto Rico & Global Income Target Maturity Fund (the Fund),[1] a non-diversified investment company licensed under the Puerto Rico Investment Companies Act, see P.R. Laws Ann. tit. 10, §§ 661-683. The Fund solicited investors through a prospectus, which promised that the

---

[1] Although nothing turns on the distinction, a few of the plaintiffs sue derivatively as investors' conjugal partners and conjugal partnerships. See P.R. Laws Ann. tit. 31, §§ 3621-3701.

-3-

Fund would invest at least 75% of its assets in notes with an "equally weighted exposure to both European and North American investment grade corporate bond indices." Relatedly, the prospectus promised that the Fund would invest no more than 25% of its assets in securities issued by a single issuer. Consistent with these two promises — the 75% promise and the 25% promise — the complaint alleges that the primary purpose of the Fund was to expose its investors to certain specialized notes issued by "different international financial institutions such as Banco Bilbao Vizcaya Argentaria, S.A."

In May of 2008, the Fund spurned these promises and invested more than 75% of its assets in notes sold by a single issuer, Lehman Brothers. The complaint alleges that this lop-sided investment transgressed both the terms of the prospectus and Puerto Rico law.

These transgressions had dire consequences. The Lehman notes soon lost most of their value, and the Fund was forced to adopt a plan of liquidation.

In due course, the plaintiffs, suing on their own behalf and on behalf of all other investors similarly situated, filed a putative class action in a Puerto Rico court. Their complaint asserted both direct claims on behalf of the investors and shareholder derivative claims on behalf of the Fund. The named defendants included the Fund; its officers and directors; its

-4-

investment advisor, San Juan Asset Management; its sales agent, BBVA Securities of Puerto Rico; and its independent auditor, PricewaterhouseCoopers (PwC). Although the complaint is not a model of clarity, it is clear that its gravamen is that the Fund did not comply with the investment policies promised in the prospectus and that the strategy it did pursue flouted Puerto Rico law.[2]

PwC, later joined by other defendants, removed the action to the federal district court, asserting that it fell within the ambit of the SLUSA. See 15 U.S.C. § 78bb(f)(2); 28 U.S.C. § 1446. The plaintiffs moved to remand. The district court (Cerezo, J.) denied the plaintiffs' motion. See Hidalgo-Vélez v. San Juan Asset Mgmt., Inc. (Hidalgo-Vélez I), No. 11-2175, 2012 WL 4427077, at *3 (D.P.R. Sept. 24, 2012).

At that point, the plaintiffs asked the district court to certify the jurisdictional question for interlocutory appeal. See 28 U.S.C. § 1292(b). The defendants not only opposed this request but also pressed dismissal motions premised on SLUSA preclusion. See Fed. R. Civ. P. 12(b)(6). The district court (McAuliffe, J.) refused to certify the question and granted the motions to dismiss. See Hidalgo-Vélez v. San Juan Asset Mgmt., Inc., No. 11-2175, 2013

---

[2] According to the complaint, Puerto Rico law prohibits a non-diversified investment company (like the Fund) from investing more than 25% of its assets in the securities of a single issuer. See P.R. Laws Ann. tit. 10, § 662(b).

WL 1089745, at *7 (D.P.R. Mar. 15, 2013). This timely appeal ensued.

## II.  ANALYSIS

We review a district court's disposition of a motion to dismiss for failure to state a claim de novo. See Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 5 (1st Cir. 2011). In conducting this review, "we accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Butler v. Balolia, 736 F.3d 609, 612 (1st Cir. 2013).

The defendants invite us to alter this standard of review on the ground that the plaintiffs failed to preserve their central argument. We decline this invitation.

The defendants insist that the plaintiffs' failure to oppose their motions to dismiss constitutes a waiver or, at least, a forfeiture. See generally United States v. Olano, 507 U.S. 725, 733 (1993) (limning distinction between waiver and forfeiture). But this hypertechnical view of the record gives too little weight to the plaintiffs' consistent and vigorous opposition to the defendants' contention that the SLUSA pretermitted the plaintiffs' claims. Common sense suggests that in certain situations substance ought to prevail over form and — in the peculiar circumstances of this case — we believe that the fact that the plaintiffs presented

-6-

their opposition in their motion for remand rather than as part of formal objections to the motions to dismiss is of no moment.

We briefly explain our reasoning. The SLUSA contains both "a preclusion provision and a removal provision." Kircher v. Putnam Funds Trust, 547 U.S. 633, 636 (2006) (footnotes omitted). These symbiotic provisions are mirror images of each other: any action that is properly removable under the removal provision is per se precluded under the preclusion provision and, conversely, any action not so precluded is not removable. See id. at 643-44; Madden v. Cowen & Co., 576 F.3d 957, 965 (9th Cir. 2009). Thus, the ruling on the plaintiffs' motion to remand would necessarily be dispositive of the defendants' motions to dismiss. Given this juxtaposition, we hold that the plaintiffs' presentation of their opposition to the SLUSA's applicability in their remand papers sufficed to preserve their position for purposes of appeal. This holding is consistent, we think, with the Supreme Court's admonition that "[r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them." Hormel v. Helvering, 312 U.S. 552, 557 (1941).

We are equally unimpressed with the defendants' more general importuning that the plaintiffs failed to develop their central argument sufficiently to preserve it on appeal. While the plaintiffs certainly could have developed their argument more fully, they did enough to put the dispositive issue in play before

-7-

the district court. In view of the fact that the Supreme Court did not decide Troice until this case was pending on appeal, treating the plaintiffs' argument as abandoned would require an overly strict application of waiver principles.

We turn now to the meat of this appeal. The SLUSA is a spare but sweeping statute, which for present purposes may be viewed as the third in a trilogy of statutory enactments. We find it helpful, therefore, to trace its lineage.

In the aftermath of the 1929 stock market crash, Congress passed the Securities Exchange Act of 1934 (the Exchange Act), ch. 404, 48 Stat. 881. See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 78 (2006). As amended, that statute forbids the use of any manipulative or deceptive devices or contrivances "in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement." 15 U.S.C. § 78j(b). Exercising regulatory authority granted by the Exchange Act, the Securities and Exchange Commission (SEC) promulgated Rule 10b-5, which likewise prohibits fraud in connection with the purchase or sale of securities. See 17 C.F.R. § 240.10b-5. The Supreme Court has read a private right of action into these provisions. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730 (1975); Sup't of Ins. of N.Y. v. Bankers Life & Cas. Co., 404 U.S. 6, 13 & n.9 (1971). Moreover, the Court has forged a link

between, on the one hand, the "in connection with" provisions of the Exchange Act and Rule 10b-5 and, on the other hand, the SLUSA's parallel "in connection with" terminology. See Dabit, 547 U.S. at 85-86.

More than sixty years after the passage of the Exchange Act, Congress enacted the second statute in the trilogy: the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104-67, 109 Stat. 737. Congress fashioned the PSLRA as a means of combating unfounded strike suits against issuers of securities. See Dabit, 547 U.S. at 81. Consistent with this congressional intent, the PSLRA imposed "heightened pleading requirements in actions brought pursuant to § 10(b) and Rule 10b-5" and contained a gallimaufry of provisions targeting abusive securities-fraud litigation. Id.

Congress soon discovered that the PSLRA had not sounded the death knell for abusive securities-fraud litigation; plaintiffs simply started using state law as a vehicle for their claims. In an effort to close this loophole, Congress passed the third statute in the trilogy in 1998: the SLUSA, Pub. L. No. 105-353, 112 Stat. 3227. See Kircher, 547 U.S. at 636; see also H.R. Conf. Rep. No. 105-803, at 13.

Pertinently, the SLUSA provides:

> [n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party

-9-

> alleging—(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).[3]  Four requirements must be satisfied in order for the SLUSA to attach.  There must be (i) a covered class action, (ii) based on state law, (iii) alleging fraud or misrepresentation in connection with the purchase or sale of, (iv) a covered security.  See Romano v. Kazacos, 609 F.3d 512, 518 (2d Cir. 2010).  Although the courts of appeals have made this same point in ways that differ slightly from circuit to circuit, see, e.g., Appert v. Morgan Stanley Dean Witter, Inc., 673 F.3d 609, 615 (7th Cir. 2012); Madden, 576 F.3d at 965; LaSala v. Bordier et Cie, 519 F.3d 121, 128 (3d Cir. 2008), all of them agree with the essence of this formulation.

This case does not demand an archaeological dig into these four requirements.  For present purposes, it is enough to emphasize a few points that are beyond cavil.  First, "[a] covered class action is a lawsuit in which damages are sought on behalf of more than 50 people."  Dabit, 547 U.S. at 83 (internal quotation marks and footnote omitted).  Second, the most common type of

---

[3] The SLUSA amended both the Securities Act of 1933, ch. 38, 48 Stat. 74, and the Exchange Act "in substantially identical ways."  Dabit, 547 U.S. at 82 n.6.  We adopt the convention of both the Troice and Dabit Courts and refer to the statutory codifications of the amendments to the Exchange Act.

"covered security is one traded nationally and listed on a regulated national exchange." Id. (internal quotation marks and footnote omitted). Another standard type of covered security is one issued by an investment company registered under the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 to 80a-64. See Troice, 134 S. Ct. at 1064.

For SLUSA purposes, Puerto Rico is the functional equivalent of a state, see 15 U.S.C. § 78c(a)(16); and in this instance, it is undisputed that the plaintiffs' suit is a covered class action alleging fraud or misrepresentation in violation of Puerto Rico law. The critical question is whether the alleged misrepresentations on which the suit is founded were made "in connection with" a transaction in covered securities.

The early appellate cases construing the SLUSA's "in connection with" requirement primarily concerned representations about or the marketing of covered securities, often in the context of investment services. See, e.g., Gray v. Seaboard Sec., Inc., 126 F. App'x 14, 16-17 (2d Cir. 2005); Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 302-03 (3d Cir. 2005); Prof'l Mgmt. Assocs., Inc. Emps.' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800, 802-03 (8th Cir. 2003); Behlen v. Merrill Lynch, 311 F.3d 1087, 1094 (11th Cir. 2002); Dudek v. Prudential Sec., Inc., 295 F.3d 875, 878-79 (8th Cir. 2002); Green v. Ameritrade, Inc., 279 F.3d 590, 598-99 (8th Cir. 2002). For the most part, the dispute in

-11-

those cases did not involve whether the misrepresentations were connected to covered securities but, rather, whether they were sufficiently intertwined with a purchase or sale. See, e.g., Rowinski, 398 F.3d at 302-03; Prof'l Mgmt. Assocs., 335 F.3d at 802-03; Behlen, 311 F.3d at 1094.

The tectonic plates shifted when the Dabit Court authoritatively delineated the scope of the SLUSA's "purchase or sale" language. See 547 U.S. at 84-86. The Court held that the SLUSA should be construed to preclude so-called "holder" actions (that is, actions in which the plaintiffs alleged injury from merely holding covered securities) in addition to actions directly involving purchases and/or sales of covered securities. See id. at 87-89. Three important lessons emerged from the Dabit Court's opinion.

To begin, the Court made pellucid that the SLUSA's "in connection with" requirement should be construed broadly. See id. at 85. Next, the Court declared that "it is enough that the fraud alleged 'coincide' with a securities transaction." Id. Finally, the Court indicated that the focus of an "in connection with" inquiry under the SLUSA should be on the defendant's actions, not on the plaintiff's actions. As the Court explained, "[t]he requisite showing . . . is deception in connection with the purchase or sale of any security, not deception of an identifiable purchaser or seller." Id. (internal quotation marks omitted).

Some elaboration is in order with respect to the second of these lessons. The Dabit Court imported this lesson from its Exchange Act and Rule 10b-5 jurisprudence. See SEC v. Zandford, 535 U.S. 813, 825 (2002); United States v. O'Hagan, 521 U.S. 642, 655-56 (1997). In the wake of Dabit, the courts of appeals interpreted this "coincide" language expansively, though not uniformly. See Roland v. Green, 675 F.3d 503, 512-14 (5th Cir. 2012) (surveying differing approaches). In Troice, the Supreme Court reviewed the Fifth Circuit's decision in Roland and shed new light on the subject. See 134 S. Ct. at 1066.

Troice involved an action brought by victims of an alleged Ponzi scheme. The fraudster sold the plaintiffs certificates of deposit (CDs) in a bank that he controlled. See id. at 1064. The CDs were uncovered "debt assets that promised a fixed rate of return," not covered securities. Id. The defendants (parties accused of abetting the fraud) argued that the SLUSA applied because, even though the CDs themselves were not covered securities, they were sold on the basis that they would be backed by covered securities. The Court found this argument unconvincing and ruled that the SLUSA did not apply. See id. at 1071-72.

The Troice Court was careful to preserve Dabit's core holding. See id. at 1066; see also Calderón Serra v. Banco Santander P.R., 747 F.3d 1, 6 (1st Cir. 2014). Nevertheless, Justice Breyer's opinion for the Court broke new ground in

-13-

illuminating the contours of the "in connection with" requirement.
It held that "[a] fraudulent misrepresentation or omission is not
made 'in connection with' . . . a 'purchase or sale of a covered
security' unless it is material to a decision by one or more
individuals (other than the fraudster) to buy or to sell a 'covered
security.'" Troice, 134 S. Ct. at 1066. In other words, the "in
connection with" requirement is satisfied only "where the
misrepresentation makes a significant difference to someone's
decision to purchase or to sell a covered security." Id. In an
effort to put the matter into perspective, Justice Breyer went on
to explain that the "in connection with" requirement reached only
those cases involving "victims who took, who tried to take, who
divested themselves of, who tried to divest themselves of, or who
maintained an ownership interest in financial instruments that fall
within the relevant statutory definition." Id. (emphasis in
original).

       With the legal landscape set in place, we now move from
the general to the specific. The court below, ruling without the
benefit of Troice, held that the SLUSA precluded the plaintiffs'
claims.[4]

---

       [4] Along the way, the district court concluded that, in
determining whether the SLUSA applied to the complaint, the
analysis should not proceed claim by claim but, rather, in terms of
the complaint as a whole. See Hidalgo-Vélez I, 2012 WL 4427077, at
*3. This conclusion is freighted with uncertainty, compare, e.g.,
Proctor v. Vishay Intertech. Inc., 584 F.3d 1208, 1228-29 (9th Cir.
2009) (holding that review should proceed claim by claim) and In re

At the outset, the district court acknowledged that the securities actually held by the plaintiffs (the shares in the Fund) were not themselves covered securities. See Hidalgo-Vélez I, 2012 WL 4427077, at *2. The court concluded, however, that this circumstance alone did not place the plaintiffs' claims beyond the SLUSA's reach: since "the Fund's anticipated investments included various covered securities," the SLUSA's "in connection with" requirement was satisfied. Id.

We agree with the district court's general approach, and Troice confirms that approach. See Troice, 134 S. Ct. at 1071-72. But as we explain below, we disagree with the district court's particularized conclusion.

For purposes of a motion to remand, we must credit the plaintiffs' thesis that the defendants' misrepresentations induced the plaintiffs to purchase uncovered securities. By the same token, it is undisputed that the only securities involved in any transactions carried out by the plaintiffs were uncovered securities. Troice teaches that a misrepresentation in connection with the purchase of an uncovered security, by itself, is insufficient to bring a claim within the SLUSA's grasp: "a connection matters where the misrepresentation makes a significant

Lord Abbett Mut. Funds Fee Litig., 553 F.3d 248, 255-56 (3d Cir. 2009) (same), with, e.g., Superior Partners v. Chang, 471 F. Supp. 2d 750, 757 (S.D. Tex. 2007) (holding that under the SLUSA a court should "examine a lawsuit in its entirety"), and this case does not require us to resolve the question.

-15-

difference to someone's decision to purchase or to sell a covered security, not to purchase or to sell an uncovered security."  Id. at 1066; cf. Calderón Serra, 747 F.3d at 6 (holding Rule 10b-5's "in connection with" requirement satisfied when there was "no dispute as to whether the plaintiffs actually bought securities covered by the Exchange Act").

To be sure, the analysis does not invariably end there. In certain cases, the primary intent or effect of purchasing an uncovered security is to take an ownership interest in a covered security.  The defendants strive to convince us that this is such a case.

In advancing this proposition, the defendants rely heavily on the so-called "feeder fund" cases.  Those are cases where the plaintiffs invested in funds that, directly or indirectly, acquired or purported to acquire covered securities. See Roland, 675 F.3d at 514-17 (canvassing cases). Typical is In re Herald, 730 F.3d 112 (2d Cir. 2013), in which the court addressed "feeder funds" in the context of the infamous Ponzi scheme initiated by Bernie Madoff.  There, investors in Madoff-affiliated feeder funds sued Madoff's bankers for facilitating the fraud.  The Second Circuit held that their claims were SLUSA-precluded because the claims were "integrally tied to the underlying fraud committed by Madoff," which "indisputably" involved "purported investments in covered securities."  Id. at

-16-

119.  It did not matter, the court said, that Madoff never actually carried out transactions in covered securities; it was enough that his "purported trading strategy utilized indisputably covered securities."  Id. at 118; see Grippo v. Perazzo, 357 F.3d 1218, 1223-24 (11th Cir. 2004) (holding that plaintiff could maintain a section 10(b) action even though "no proof exist[ed] that a security was actually bought or sold").

Herald is readily distinguishable.  The Madoff funds were marketed primarily as vehicles for exposure to covered securities. See In re Herald, Primeo, & Thema Sec. Litig., No. 09-289, 2011 WL 5928952, at *1 (S.D.N.Y. Nov. 29, 2011) (stating that Madoff "told investors that he was buying and selling Standard and Poor's 100 stocks and options for their accounts").  Thus, on a petition for rehearing following the Troice decision, the Second Circuit concluded with little apparent difficulty that the victims of the fraud had intended to take an ownership interest in covered securities.  See In re Herald, ___ F.3d ___, ___ (2d Cir. 2014) [Nos. 12-156, 12-162, May 28, 2014, slip op. at 8] (per curiam). What is more, the fraud depended heavily on misrepresentations about transactions in covered securities.  Given that interrelationship, the case fits comfortably within the confines of the "in connection with" requirement.  See, e.g., Zandford, 535 U.S. at 822 (holding SLUSA precluded claims when plaintiffs were "duped into believing [the defendant] would 'conservatively invest'

their assets in the stock market"); Instituto de Prevision Militar v. Merrill Lynch, 546 F.3d 1340, 1352 (11th Cir. 2008) (explaining that because the alleged fraudster "marketed 'covered securities' . . ., any misrepresentations and omissions [that the fraudster] made were 'in connection with the purchase or sale of a covered security'").

The case at hand is at a considerable remove from Herald. Although the prospectus suggested that some (relatively small) part of the Fund's portfolio might include covered securities, any such holdings were incidental to the primary purpose of the Fund: the main allocative stipulation contained in the prospectus was that at least 75% of the Fund's assets would be invested in certain specialized notes offering exposure to North American and European bond indices. The defendants have not asserted that these particular investments were covered securities. In these circumstances, the link between the alleged misrepresentations and the covered securities in the Fund's portfolio is too attenuated to bring the complaint within the maw of the SLUSA.

This assessment is confirmed by the intrinsic nature of the misrepresentations alleged. Those misrepresentations — in stark contrast to the misrepresentations in Herald — comprised mainly false promises to purchase uncovered securities. As pleaded, the plaintiffs' case depends on averments that, in substance, the defendants made misrepresentations about uncovered

securities (namely, those investments that were supposed to satisfy the 75% promise); that the plaintiffs purchased uncovered securities (shares in the Fund) based on those misrepresentations; and that their primary purpose in doing so was to acquire an ownership interest in uncovered securities. Seen in this light, the connection between the misrepresentations alleged and any covered securities in the Fund's portfolio is too tangential to justify bringing the SLUSA into play.

In arriving at this conclusion, we read Troice for all that it is worth. When courts are confronted with plaintiffs who allege that a misrepresentation has induced them to purchase uncovered securities, the SLUSA precludes the claim only if the circumstances of the purchase evince an intent to take an ownership interest in covered securities. Troice itself represents one end of this continuum. When a plaintiff purchases a fixed-rate debt asset, the SLUSA does not apply even though that debt may be backed in part by covered securities. Such a debt arrangement does not evince an intent to take an ownership position in the underlying (covered) securities. Herald represents the opposite end of the continuum. When the primary purpose of a plaintiff's purchase of an uncovered security is to reap the benefit of trading in covered securities, the SLUSA does apply.

In cases, like this one, that fall between these two poles, courts must carefully consider whether and to what extent

-19-

the plaintiffs sought to take an ownership interest in covered securities. The relevant questions include (but are not limited to) what the fund represents its primary purpose to be in soliciting investors and whether covered securities predominate in the promised mix of investments. Of course, an inquiring court should also look at the nature, subject, and scope of the alleged misrepresentation.

In conducting this appraisal, the court should bear in mind the Troice Court's admonition that "only . . . those who do not sell or participate in selling securities traded on U.S. national exchanges" should be exempted from the SLUSA and subjected to state-law class actions. 134 S. Ct. at 1068 (emphasis in original). As applied here, this admonition cuts against preclusion. After all, the Fund was chartered under a particular Puerto Rico statutory framework and marketed to residents of Puerto Rico principally as a vehicle for exposure to uncovered securities.[5]

In the circumstances of this case, the relevant mix of factors leads to a determination that the district court's

---

[5] For the sake of completeness, we note that the analysis might be different in cases "where the entirety of the fraud depended upon the [fraudster] convincing the victims . . . to sell their covered securities in order for the fraud to be accomplished." Troice, 134 S. Ct. at 1072 (quoting Roland, 675 F.3d at 523). Here, however, the allegations of the complaint "are not so tied with the sale of covered securities." Id. (quoting Roland, 675 F.3d at 523).

preclusion ruling fell on the wrong side of what is admittedly a fine line. The link between the misrepresentations alleged and the covered securities in the Fund's portfolio is simply too fragile to support a finding of SLUSA preclusion under <u>Troice</u>.

## III. CONCLUSION

The SLUSA is strong medicine and should be dispensed only in compliance with Congress's statutory prescription. Given the nature of the misrepresentations asserted and the circumstances of this case, we do not think that Congress's prescription applies here. It follows that the district court was without jurisdiction to grant the defendants' motions for dismissal but, instead, should have granted the plaintiffs' motion to remand.

We need go no further. We vacate the judgment of dismissal, reverse the order denying remand, and remit the case to the district court with instructions to return it to the Puerto Rico Court of First Instance. Costs shall be taxed in favor of the plaintiffs.

**<u>So Ordered.</u>**